JAMES McCOLGAN *et al.*, Plaintiffs-Appellants, *v.* UNITED MINE WORKERS OF AMERICA *et al.,* Defendants-Appellees (Shamrock Mine Products, Inc., *et al.,* Defendants).

First District (5th Division)   No. 83—1027

Opinion filed June 1, 1984

Leonard M. Ring & Associates, of Chicago (Leonard M. Ring and Judith E. Fors, of counsel), for appellants.

Arvey, Hodes, Costello & Burman, of Chicago (Malcolm S. Kamin and Judith I. Byrd, of counsel), for appellees United Mine Workers of America and Sam Church, Jr.

Barbara Gumbel, of Edwardsville, for other appellees.

JUSTICE LORENZ delivered the opinion of the court:

This interlocutory appeal presents the issue whether a union owes to workers a common law duty of care which is not preempted by Federal Law. Plaintiffs, James and Deloris McColgan, brought an action in the circuit court of Cook County seeking damages for personal injuries against the United Mine Workers of America (UMW), UMW District 12, and UMW Local 1870, each as an entity and as a class; and against two companies which supply mine equipment. The circuit court dismissed plaintiffs' complaint as against all union defendants, and plaintiffs appeal.

We accept all well pleaded facts as true on a motion to dismiss. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 329, 371 N.E.2d 634.) On November 16, 1977, plaintiff James McColgan worked as an electrician for the Zeigler Coal Company. He was repairing a drill near a "pull through curtain," a device used to control ventilation in underground mining, when he was struck by a shuttle car which traveled through the curtain. Plaintiffs allege that the unions undertook to monitor and correct unsafe mine conditions, and that the unions failed to exercise reasonable care in the performance of this undertaking. Specifically, the unions:

"a) Failed to install or cause to be installed available 'pull through' curtains through which visibility was possible; or

b) Failed to warn their members including plaintiff;

c) Permitted its members, including plaintiff, to work in an area in said mine without transparent curtains; or

d) Failed to take remedial action against Zeigler Coal Co."

As a result of these negligent acts, plaintiff James McColgan was se-

riously injured, and plaintiff Deloris McColgan was injured derivatively.

■■ Common law negligence consists of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately caused by the breach. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 541, 301 N.E.2d 307; Prosser, Torts sec. 30, at 143 (4th ed. 1971).) The existence of a duty, that is, a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another, is a matter of law to be determined by the court. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 555, 328 N.E.2d 538; Prosser, Torts sec. 37, at 206 (4th ed. 1971).) Illinois has recognized the principle that liability can arise from negligent performance of a voluntary undertaking (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74, 199 N.E.2d 769), but the scope of the duty is limited by the extent of the undertaking. *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 209-10, 399 N.E.2d 596.

■■ Plaintiffs urge this court to impose upon the union defendants a duty to exercise reasonable care to monitor safety conditions in the mine and to correct those defects of which they know or should know. Plaintiffs point to the unions' constitutions and bylaws as well as the collective bargaining agreement to indicate that defendants voluntarily undertook responsibility for safety conditions. We have scrutinized the documents advanced by plaintiffs and considered the relationships of the parties. We find that the undertaking alleged cannot reasonably be construed to impose a duty which would extend to the unions' conduct at issue.

The collective bargaining agreement pledges the employers' and unions' joint and individual efforts to attain a safe and healthful workplace. The agreement establishes an industry-wide health and safety committee, and it provides that a "Mine Health & Safety Committee" (Committee) shall be established at each mine. The Committee is composed of mine workers who are deemed to be acting in the scope of employment within the meaning of applicable workers' compensation law. The Committee is required to inspect the mine quarterly, and is authorized to perform additional inspections. With one exception, all safety matters are subject to resolution in accordance with grievance procedures, beginning at the worker-supervisor level, rising to the company and district levels, and eventually going to arbitration. The exception reads:

> "In those special instances where the Committee believes that an imminent danger exists and the Committee recommends that the Employer remove all Employees from the involved

area, the Employer is required to follow the Committee's recommendation and remove the Employees from the involved area immediately."

Even so, Committee members who invoke this power arbitrarily may be removed from the Committee by the employer, and disputes over removal of members are referred to arbitration.

The UMW Constitution mentions local safety committees, and the UMW District 12 constitution provides for annual district-wide safety committee meetings "to resolve safety issues and establish uniform and more efficient methods to enforce safety \*\*\*." The local union model bylaws state as part purpose:

"To protect the lives, limbs and health of our members through legislative enactments and effective enforcement of that legislation, through collective agreements and vigorous administration of those agreements and, where necessary, through refusal to work under dangerous conditions."

The bylaws also state that the safety committee will be responsible for maintaining safe and healthful conditions and enforcing safety provisions of the law and the collective bargaining agreement.

The thrust of defendants' undertaking was the improvement of mine safety through legislation, negotiation, collective action and independent enforcement. The unions' power was limited: they could inspect the mine, consult with the mine operator, contact State or Federal agencies, and in extraordinary circumstances, recommend with binding effect upon the operator that workers be withdrawn from the mine. We believe that the most that can be said is that defendants were under a duty to inspect and a duty to report safety-standard violations of which they had actual knowledge. However, it is clear to us that defendants' undertakings imposed no duty with respect to the negligent omissions alleged in plaintiffs' complaint.

Plaintiffs allege neither failure to inspect nor failure to exercise reasonable care during inspections. Indeed, while plaintiffs characterize defendants' duty as a duty to "monitor" and correct unsafe conditions, plaintiffs make no attempt to connect monitoring or inspection to this occurrence. Rather, it appears that an inspection, negligent or otherwise, would have revealed no more than was already known. Similarly, plaintiffs do not allege that the use of opaque pull-through curtains violated any safety standard, and so defendants' duty to report violations was not implicated.

By the same token, the negligent omissions charged by plaintiffs were not reasonably within the scope of defendants' undertaking. Plaintiffs allege that defendant unions failed to install or cause to be

installed transparent pull-through curtains. Clearly, the unions could not install equipment on company property. They could "cause" equipment to be installed only in the sense that they could persuade, negotiate or pressure the company to install it. Plaintiffs allege that defendants failed to warn of the unsafe condition, but it appears that the parties expected information to flow from the members to the union and not from the union to the members.

■ Plaintiffs allege that the unions permitted members to work in an area with opaque pull-through curtains, and it is true that defendants had the power to force the employer to withdraw workers from areas of imminent danger. We cannot construe this power to impose liability upon the unions for permitting work in the presence of an unsafe condition. Congress has noted that underground mining is an inherently dangerous industry. (See 30 U.S.C. sec. 801 (1983).) A duty to withdraw workers from the presence of any unsafe condition would either close the mines or render the unions insurers of mine accidents; we believe such an interpretation to be far out of proportion to the unions' undertaking. Plaintiffs' allegation that defendants failed to take remedial action against the company essentially restates the earlier allegations, and thus charges no conduct which comes within the scope of the unions' duty.

■ It is important to recognize that the imposition of a duty is an exercise of judicial policy making. (See *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307; Prosser, Torts sec. 53, at 325-26 (4th ed. 1971).) "In determining whether the law imposes a duty, foreseeability of possible harm alone is not the test, for in retrospect almost every occurence may appear to be foreseeable. The likelihood of injury from the existence of a condition, the magnitude of guarding against it, and the consequences of placing the burden upon the defendant must be taken into account." (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 29, 305 N.E.2d 535.) We note that the instant injury did not occur in a legal vacuum: Federal regulations seek to reduce the risk of blind collisions through mandatory audible warnings (see 30 C.F.R. sec. 75.1403—10(f) (1983)), and claims against equipment manufacturers provide an incentive to design and sell safer equipment. In our opinion, the likelihood of injury from the use of opaque pull-through curtains is too small, the magnitude of duty required to guard against such defects is too great, and the consequences of placing the duty upon the unions are too far-reaching to justify the imposition of a duty to correct unsafe conditions throughout the mining industry.

Plaintiffs strenuously argue that the unions were under a duty to use their economic power to bring about mine safety. We have noted

that plaintiffs' allegations can be construed as charging failure to persuade, negotiate or pressure the company to install pull-through curtains, and it is clear that the unions have undertaken to improve mine safety using these methods. For this reason, we believe that the Federal preemption issue must be addressed.

The United States Supreme Court has interpreted Federal labor law to impose upon collective bargaining representatives a duty of fair representation. (See *Vaca v. Sipes* (1967), 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903; *Ford Motor Co. v. Huffman* (1953), 345 U.S. 330, 97 L. Ed. 1048, 73 S. Ct. 681.) The duty of fair representation includes the obligation to enforce fairly the provisions of collective bargaining agreements, and the duty is breached by arbitrary, discriminatory or bad-faith conduct. (See *Vaca v. Sipes* (1967), 386 U.S. 171, 177, 17 L. Ed. 2d 842, 850, 87 S. Ct. 903, 909-10.) The seventh circuit has interpreted this language to mean that a worker must allege some form of intentional misconduct, and that allegations of negligence are insufficient to state a cause of action for breach of the duty of fair representation. (*Graf v. Elgin, Joliet & Eastern Ry. Co.* (7th Cir. 1983), 697 F.2d 771, 778-79.) Because plaintiffs at bar allege no intentional misconduct, the sole remaining question is whether the Federal requirement of intention preempts the State from imposing liability upon unions, in their role as collective bargaining representatives, for negligent misconduct. We believe that the Federal standard prevails.

In *Ford Motor Co. v. Huffman* (1953), 345 U.S. 330, 97 L. Ed. 1048, 73 S. Ct. 681, the Supreme Court reviewed the complaint of an employee who argued that his union had wrongfully bargained his seniority rights away and discriminated against veterans. The *Huffman* court reasoned:

> "Any authority to negotiate derives its principal strength from a delegation to negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of the parties represented. A major responsibility of negotiators is to weigh the relative advantages and disadvantages of differing proposals. *** Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. *A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it*

*represents*, subject always to complete good faith and honesty of purpose in the exercise of its discretion." (Emphasis added.) (345 U.S. 330, 337-38, 97 L. Ed. 1048, 1057-58, 73 S. Ct. 681, 686.)

We are persuaded that the intentional misconduct standard must control unions' discretionary duties.

The unions' decision to emphasize one unsafe condition over another, or to emphasize wages or hours over safety conditions in their dealings with employers, involves various and subtle assessments which defy enumeration and definition. Generally, unions have an incentive to work for the benefit of their members, thus protection from intentional misconduct should suffice. (See *Graf v. Elgin, Joliet & Eastern Ry. Co.* (7th Cir. 1983), 697 F.2d 771, 779.) We believe that imposing a duty to exercise discretion to persuade, negotiate or pressure employers to use particular safety equipment would constitute an unwarranted intrusion into the free give-and-take which characterizes the collective bargaining process.

In short, we hold that that the union defendants owed no duty which would provide a basis for relief to plaintiffs in this action. Because the circuit court's dismissal of all union defendants may be sustained on this ground, we need not decide whether the unions were properly joined as entities. For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

MEJDA, P.J., and O'CONNOR, J., concur.