DONALD J. ORR *et al.*, Plaintiffs-Appellants, v. CARTER SHEPARD *et al.*, Defendants (Edmund P. Burke *et al.*, Defendants-Appellees).

First District (3rd Division)   No. 85—3108

Opinion filed May 25, 1988.

FREEMAN, J., dissenting.

Saul R. Wexler, of Shaheen, Lundberg, Callahan & Orr, P.C., of Chicago, for appellants.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, of counsel), for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs, Donald Orr, William Orr and Margaret Orr (Orrs), brought an action against defendants, Carter Shepard, Cassie Shepard, Signal Printing Company, Continental Illinois Bank & Trust Company of Chicago, Edmund P. Burke, Burke & Burke, Ltd., and numerous other depositories suspected of maintaining funds of the Shepards. In their complaint against Edmund P. Burke and Burke & Burke, Ltd. (Burke), the Orrs alleged professional negligence or, in the alternative, breach of contract, in that Burke: (1) failed to inform the bank that the account was to be an escrow account; (2) established the account in such a manner so as to permit Shepard to withdraw the funds in violation of the escrow agreement; and (3) failed to review the certificate of deposit when received to determine whether it was in conformance with the escrow agreement. Burke made a motion to dismiss which was granted by the trial court. The court further entered an order finding no just cause to delay enforcement or appeal as to the dismissal of Burke.

On appeal, the Orrs allege that the circuit court erred in dismissing Burke from the lawsuit and not allowing them to file an amended complaint. We affirm.

The Orrs were the sole shareholders in a now dissolved Illinois cor-

poration which was known as Orr Building Company (Orr Building). Signal Printing Company, Inc. (Signal), was an Illinois corporation in which Carter Shepard was an officer, director and sole shareholder. Orr Building and Signal entered into a contract for the sale and purchase of realty owned by Orr Building. Under this contract, Shepard and his wife, Cassie, personally guaranteed payment and performance by Signal.

Prior to closing the contract, but after Signal took possession and occupied the property, the realty was destroyed by fire. Following the payment of approximately $100,000 in insurance proceeds to Orr Building, a dispute arose as to the portion, if any, of the proceeds which Signal was entitled to receive. Signal claimed that $30,000 of the $100,000 belonged to Signal to cover the value of its personal property allegedly destroyed in the fire.

Orr Building and Signal could not reach an agreement as to what amount, if any, Signal was entitled to receive. They did, however, agree to pay the insurance adjusters their fee and place the remaining proceeds in an escrow account pending resolution of their dispute. On August 4, 1982, the parties met at the law firm of Burke & Burke and executed an escrow agreement prepared by Burke & Burke. The agreement provided that the insurance proceeds would be deposited into an interest-bearing account at Continental Illinois National Bank (Continental) and further stated that "said escrow may be terminated by the agreement of the parties and upon the joint signatures of the parties."

Burke established the escrow account in December 1982 at Continental, and the certificate of deposit indicated that the account was a joint tenancy account. However, on May 15, 1984, the Orrs were informed by Continental that Shepard had withdrawn all of the money from the account in December 1983. The Orrs had neither given Shepard permission to withdraw the money nor authorized Continental to disburse the money to Shepard.

Shepard admitted to withdrawing the money and voiced an intention not to return the money to Continental. Thereafter, an attorney for the Orrs met with Burke. Burke stated that it established the escrow account, gave the copy of the certificate of deposit to the Orrs' attorney and kept the original certificate of deposit in its possession.

The Orrs filed their suit in chancery, naming Burke as a defendant. The circuit court granted Burke's motion to dismiss on July 18, 1985. On August 9, 1985, the Orrs filed a motion for reconsideration. In this motion, the Orrs stated:

"[A]ccordingly, based upon the allegations set forth in the com-

plaint, if the Court deems those to be inappropriate to support a cause of action against Defendant Edmund P. Burke and Burke & Burke, Ltd., Plaintiffs should be allowed to amend the complaint to state a valid cause of action, if they so desire."

The Orrs, however, never tendered an amended complaint or indicated how their complaint could be amended to state a cause of action. The court denied the Orrs' motion for reconsideration and this appeal followed.

■■ The Orrs first argue that the trial court erred in dismissing Burke from the lawsuit. It is the Orrs' position that the Illinois Supreme Court case of *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96, is not applicable to this case. We disagree.

In *Pelham*, our supreme court delineated the test for determining if a duty exists between an attorney and a nonclient. The court stated:

"In the area of legal malpractice the attorney's obligations to his client must remain paramount. In such cases the best approach is that the plaintiffs must allege and prove facts demonstrating that they are in the nature of third-party intended beneficiaries of the relationship between the client and the attorney in order to recover in tort. [Citations.] By this we mean that to establish a duty owed by the defendant attorney to the nonclient the nonclient must allege and prove that the intent of the client to benefit the nonclient third party was the *primary or direct purpose* of the transaction or relationship. [Citation.]" (Emphasis added.) 92 Ill. 2d at 20-21, 440 N.E.2d at 99.

■■ ■ Our review of the record demonstrates that the complaint herein clearly fails to state a cause of action for breach of contract or for legal malpractice. The complaint fails to allege, legally or factually, that a contract was entered into for the direct benefit of the Orrs, which is an indispensable element of a third-party beneficiary theory of recovery. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 56, 421 N.E.2d 182, 187-88.) Moreover, for a complaint of legal malpractice grounded in negligence to be legally sufficient, the complaint must set forth facts that establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach. *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617, 618.

Here, when we apply the intent-to-directly-benefit test to the facts alleged in the complaint, it is clear that the Orrs were not direct third-party beneficiaries. Burke was the law firm of the Shepards. The primary purpose of Burke's work was to protect the interests of the Shepards. At the time that Burke made contact with the Orrs, it was the

Shepards, Burke's clients, who were attempting to get their share of the insurance proceeds from the Orrs. At no time do the Orrs allege that Burke in any way caused or contributed to the Shepards' withdrawal of the money or conspired with the Shepards to injure the Orrs. Nor do the Orrs claim that Burke represented them in any way in the transaction. Based on these circumstances, Burke owed no fiduciary duty to the Orrs. At best, the Orrs were only incidental beneficiaries. Therefore, if the Orrs reposed trust and confidence in Burke, it was unreasonably placed and could not be the basis for an equitable type of action founded on breach of a fiduciary or confidential relationship. We likewise find that no duty existed between the parties to this lawsuit. There is no indication from the record before us that Burke and the Orrs stood in such a relationship to one another that the law imposed upon Burke an obligation of reasonable conduct for the benefit of the Orrs.

■ To impose a greater liability on an attorney without the nonclient demonstrating a primary or direct purpose relationship would have the undesirable effect of creating a duty to third parties which would take precedence over an attorney's fiduciary duty to his client. Public policy mandates that when an attorney acts in his professional capacity, he must be free to advise his client without fear of personal liability to third persons and nonclients if the advice later proves to be incorrect. *Schott v. Glover* (1982), 109 Ill. App. 3d 230, 234-35, 440 N.E.2d 376, 379.

Under the facts as pleaded, we hold that Burke owed no duty to the Orrs, the breach of which would give rise to a cause of action for negligence. Nor do the Orrs have a cause of action in contract. Accordingly, we conclude that the trial court properly dismissed the Orrs' complaint for failure to state a cause of action.

■ We note that the Orrs urge us to accept their position that their suit against Burke is not grounded in negligence or breach of contract with a third-party beneficiary as espoused in *Pelham* and therefore *Pelham* is inapplicable to the case at bar. The Orrs assert that Burke's gratuitous and voluntary undertaking to set up the escrow created a duty irrespective of his professional status as an attorney. As a result, Burke was required to exercise reasonable care and skill in performing that undertaking. The Orrs argue that Burke owed them this duty because Burke agreed in a face-to-face meeting that Burke would perform the task. Further, the Orrs argue that Burke owed them a duty under at least one of the following theories: (1) constructive trust theory, in that Burke undertook an obligation as trustee to exercise reasonable and prudent care; (2) principal/agent relation-

ship, which gave rise to a fiduciary relationship as a matter of law; and (3) bailment relationship whereby Burke, as bailee, had a duty to exercise reasonable care when dealing with the insurance proceeds delivered to them.

From our reading of the complaint, we find that Orrs' contortion of their grounds for recovery untenable. The Orrs cannot avoid the mandates of *Pelham* by couching their grounds for recovery in principles that have not been accepted in delineating the duty of an attorney to his clients and nonclients. This suit is unquestionably one against Burke in its professional capacity of rendering legal services. We are bound to follow the mandates of *Pelham* in spite of the urging of the Orrs to expand the duty and theories of liability of attorneys to nonclients.

Next, the Orrs argue that the trial court erred in not allowing them leave to file an amended complaint. We disagree.

A plaintiff's right to amend his complaint is not absolute, and it is within the trial court's discretion whether to grant or deny leave to amend. (*Downers Grove Associates v. Red Robin International, Inc.* (1986), 151 Ill. App. 3d 310, 319, 502 N.E.2d 1053, 1060.) On review, the trial court's determination regarding the right to file an amended complaint will not be disturbed unless that ruling is shown to be a clear abuse of discretion. *Downers Grove Associates,* 151 Ill. App. 3d at 319, 502 N.E.2d at 1060.

In the instant case, the Orrs never formally requested leave to amend. In their motion for reconsideration, the Orrs asked for leave to amend only if the court found that their complaint as tendered did not state a cause of action and if the Orrs so desired to amend. Under these circumstances, we cannot say that the trial court abused its discretion in not allowing the Orrs to amend their complaint. The Orrs did not tender an amended complaint nor did they present to the court how their original complaint could have been amended to state a cause of action. The Orrs cannot now argue that the trial court abused its discretion in light of the fact that they did not properly bring this issue before the court in the form of a request for leave to amend.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

WHITE, P.J., concurs.

JUSTICE FREEMAN, dissenting:
I respectfully dissent. The majority concludes that no duty exists

between plaintiffs and defendants Edmund P. Burke and Burke & Burke, Ltd. (Burke), and that plaintiffs fail to state a cause of action for professional negligence or breach of contract. I disagree with the majority's holding and would find that plaintiffs' complaint sufficiently alleges a duty between plaintiffs and Burke. For that reason, I would reverse the trial court and remand this matter with directions to allow plaintiffs leave to amend their complaint.

Plaintiffs' action against Burke arises out of Burke's undertaking to establish or open up an escrow account on behalf of plaintiffs, Burke, and other codefendants in accord with the escrow agreement entered into by the parties in the underlying litigation. A detailed review of the pertinent allegations of plaintiffs' complaint is necessary for a determination of the correctness of the trial court's decision. The complaint states:

> "12. At a meeting with their attorneys on or about August 4, 1982, at the offices of Burke & Burke, Ltd., Signal and Orr Building agreed to place the insurance proceeds into an escrow account pending resolution of their dispute.
>
> 13. Signal and Orr Building executed the Escrow Agreement, a copy of which is attached hereto as Exhibit A and incorporated herein as though fully set forth. The Escrow Agreement provides, *inter alia*, that the insurance proceeds shall be deposited in an interest-bearing account at the Continental Illinois National Bank, and
>
> 'Said escrow may be terminated by the agreement of the parties *and upon the joint signatures of the parties* \*\*\*.'
>
> 14. Burke & Burke, Ltd. and Edmund P. Burke undertook establishment of an escrow account that conformed to the expressed intent of the parties. A copy of a letter so indicating is attached hereto as Exhibit B and incorporated herein as though fully set forth. Plaintiffs relied, reasonably, upon these defendants to establish an escrow account that would conform to the Escrow Agreement.
>
> 15. Burke & Burke, Ltd. and Edmund Burke caused bank signature cards to be prepared for signature by the two corporations through their officers. A copy of the signature card is attached hereto as Exhibit C and incorporated herein as though fully set forth.
>
> \* \* \*
>
> 21. On May 16, 1984, plaintiff received from Burke & Burke, Ltd. and Edmund P. Burke a copy of the Certificate of Deposit that was established pursuant to the Escrow Agreement, Ex-

hibit A. Plaintiff had never before seen this document. A copy of the Certificate of Deposit is attached hereto as Exhibit D and incorporated herein as though fully set forth.

22. During a meeting with an attorney representing the Orrs on May 16, 1984, Edmund P. Burke stated that he and Burke & Burke, Ltd. did establish the escrow account, gave the copy of Exhibit D to plaintiffs' attorney and stated that Exhibit D is the Certificate of Deposit in or by which the escrowed funds were deposited in the Continental Illinois National Bank & Trust Co. of Chicago, and that the original Certificate of Deposit is in the possession of Burke & Burke, Ltd.

## LIABILITY
\*\*\*

24. In the alternative, Burke & Burke, Ltd. and Edmund P. Burke negligently established the account in which the said insurance proceeds were to be held in escrow by:

a) Failing to inform Continental Illinois National Bank & Trust Co. of Chicago that the account was to be an escrow account, or

b) Established the account in the name, 'Carter Shepard or Donald Orr or Survivor,' so that either person could withdraw the funds therefrom without the signature or permission of the other party or without a court order, in violation of its undertaking to establish an account in accordance with the terms of the aforesaid Escrow Agreement, or

c) Failed to review the said Certificate of Deposit when received, to see whether the account conformed to the Escrow Agreement.

\* \* \*

WHEREFORE, Plaintiff prays the court to order as follows:
\* \* \*

G. To enter judgment against Burke & Burke, Ltd., Edmund P. Burke and/or Continental Illinois National Bank & Trust Co. of Chicago in a sum equal to the insurance proceeds and interest thereon not restored by Carter Shepard."

While Burke is an attorney who represented other codefendants in the underlying action, plaintiffs do not allege that they have a special or confidential relationship with Burke, *viz.*, an attorney-client relationship. Nor do plaintiffs assert that they are the indirect or third-party beneficiaries of the attorney-client relationship between Burke, as an attorney, and the other codefendants, as his clients.

The excerpted allegations, however, do establish a cause of action in negligence. Common law negligence consists of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury or damages proximately caused by the breach. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 541, 301 N.E.2d 307; *McColgan v. United Mine Workers* (1984), 124 Ill. App. 3d 825, 464 N.E.2d 1166, *cert. denied* (1985), 470 U.S. 1051, 84 L. Ed. 2d 816, 105 S. Ct. 1752.) The existence of a duty, that is, a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another, is a matter of law to be determined by the court. *Fancil v. Q. S. E. Foods, Inc.* (1975), 60 Ill. 2d 552, 555, 328 N.E.2d 538; W. Prosser, Torts §37, at 206 (4th ed. 1971).

The majority states that the record fails to indicate that plaintiffs and Burke "stood in such a relationship to one another that the law imposed upon Burke an obligation of reasonable conduct for the benefit of the Orrs." (171 Ill. App. 3d at 108.) The majority states that if plaintiffs placed trust and confidence in Burke, it was unreasonably placed, and that no duty existed between plaintiffs and Burke. The majority relies on the holding in *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96, that for a nonclient to succeed in a negligence action against an attorney, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party. (*Pelham*, 92 Ill. 2d at 21.) Since plaintiffs fail to allege that the attorney-client relationship between Burke and the other codefendants was entered into in order to directly benefit plaintiffs, the complaint fails to state a cause of action.

This court, however, need not apply the "intent-to-directly-benefit" test to the case at bar. Rather, the law has provided for recovery, under such facts as are alleged in the instant case, based on the assumption by defendant of an obligation and plaintiff's reasonable reliance on him. In *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74, 199 N.E.2d 769, the Illinois Supreme Court reiterates the ancient principle that liability can arise from negligent performance of a voluntary undertaking. (See also *McColgan v. United Mine Workers* (1984), 124 Ill. App. 3d 825, 827, 464 N.E.2d 1166, *cert. denied* (1985), 470 U.S. 1051, 84 L. Ed. 2d 816, 105 S. Ct. 1752.) The supreme court also explains that the scope of the duty is limited by the extent of the undertaking. *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 209-10, 399 N.E.2d 596; *McColgan*, 124 Ill. App. 3d at 827.

Apparently, however, there are no Illinois cases which deal specifically with facts and issues substantially similar to those in the case at bar. In *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96,

however, the court carved out an exception to the rule that an attorney generally is not liable for negligence to a nonclient unless the client intended that the primary purpose of the attorney-client relationship was to benefit the nonclient. The court in *Pelham* stated:

> "We believe a different situation would confront us if this complaint had alleged sufficient facts to show that the defendant had undertaken a duty to notify the insurance company or the husband's employer of the provision in the divorce decree. In that situation, the attorney may have a duty to exercise reasonable care because his client and the plaintiffs herein could have justifiably relied on that undertaking. *Schwartz v. Greenfield, Stein & Weisinger* (1977), 90 Misc. 2d 882, 396 N.Y.S.2d 582; *Steward* [*sic*] *v. Sbarro* (1976), 142 N.J. Super. 581, 362 A.2d 581." (*Pelham*, 92 Ill. 2d at 24.)

Thus, the court in *Pelham* left open the door to recovery for a nonclient plaintiff who reasonably relies on a defendant attorney who has undertaken a duty to act for the benefit of the plaintiff.

The court in *Pelham* cites *Stewart v. Sbarro* (1976), 142 N.J. Super. 581, 362 A.2d 581, which provides:

> "It is true that generally an attorney is not liable to third persons for negligence in the performance of his professional duties. [Citation.] But this rule is not all encompassing. Thus, where an attorney assumes a fiduciary obligation, it applies to persons who, though not strictly clients, he has or should have reason to believe rely on him. [Citations.] We believe, moreover, that where, as here, an attorney undertakes a duty to one other than his client, he may be liable for damage caused by a breach of that duty to a person intended to be benefited by his performance. [Citation.]" *Stewart*, 142 N.J. Super. at 593, 362 A.2d at 588.

A fiduciary is a person having a duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking. A fiduciary relationship exists where special confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to interests of one reposing the confidence. Black's Law Dictionary 563-64 (5th ed. 1979).

The allegations of plaintiffs' complaint sufficiently allege facts that come within the exception carved out in *Pelham* and *Stewart*. Plaintiffs allege the duty, *i.e.*, that Burke "undertook establishment of an escrow account that conformed to the expressed intent of the parties." Plaintiffs also allege specific acts taken by Burke in relation to performance of the assumed duty, *i.e.*, Burke "caused bank signature

cards to be prepared for signature by the two corporations," and Burke supplied plaintiffs with a copy of the certificate of deposit that was established pursuant to the escrow agreement. Further, plaintiffs allege that they reasonably relied on Burke to establish an escrow account which would conform to the escrow agreement. I believe that these allegations are sufficient to survive defendants' motion to dismiss.

Plaintiffs contend on appeal that the trial court erred in not allowing them leave to amend their complaint. The majority finds no abuse of discretion by the trial court, and notes that plaintiffs failed formally to request leave to amend in the trial court and failed to tender an amended complaint. I disagree with the majority's analysis and conclusion and would find that the trial court abused its discretion in failing to grant plaintiffs leave to amend the complaint.

The allowance of amendments to pleadings is within the sound discretion of the trial court, and the refusal to allow an amendment is not prejudicial error unless such discretion is abused. (*Old Salem Chautauqua Association v. Illinois District Council of the Assembly of God* (1958), 13 Ill. 2d 258, 266, 148 N.E.2d 777.) Amendments must be made on "just and reasonable terms." (Ill. Rev. Stat. 1987, ch. 110, par 2—616(a).) Leave to amend a complaint should be granted unless it is apparent that even after amendment no cause of action can be stated. (*Juhasz v. Hejna* (1985), 139 Ill. App. 3d 35, 487 N.E.2d 113.) The circuit court's power to permit amendments should be exercised with a view toward allowing a party to fully present his cause of action. (*Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 746, 474 N.E.2d 1274.) The test to be applied in determining whether the trial court abused its discretion is whether the decision furthers the ends of justice. *Hall v. Northwestern University Medical Clinics* (1987), 152 Ill. App. 3d 716, 504 N.E.2d 781; *Murphy v. Roppolo-Prendergast Builders, Inc.* (1983), 117 Ill. App. 3d 415, 453 N.E.2d 846.

I believe that the trial court abused its discretion by denying plaintiffs' request for leave to amend the complaint. While I would find that plaintiffs sufficiently state a cause of action against Burke since the complaint reasonably informs defendants of the nature of the claims against them (Ill. Rev. Stat. 1987, ch. 110, par. 2—612(b)), I think that plaintiffs should be allowed leave to amend in order to state their claims against the various defendants in separate counts, as required by section 2—613(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—613(a)). Allowing plaintiffs leave to amend their complaint would further the ends of justice. It is clear from plaintiffs'

original complaint that plaintiffs are able to state a cause of action against Burke. This court should allow plaintiffs to fully present their cause of action against Burke.

For the foregoing reasons, I would reverse the trial court's granting of defendant's motion to dismiss and grant plaintiffs leave to amend their complaint.