892 F.2d 549
 133 L.R.R.M. (BNA) 2121, 58 USLW 2431,
113 Lab.Cas. P 11,712,
5 IER Cases 187, 15 Fla. L. Weekly D2431
 Terry Ray SLUDER and Tina Sluder, Plaintiffs-Appellants,
v.
UNITED MINE WORKERS OF AMERICA, INTERNATIONAL UNION; United
Mine Workers of America, District 12; John Doe;
and Tom Roe, Defendants-Appellees.
 No. 88-2910.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 4, 1989.
Decided Dec. 22, 1989.
 
 Rodney V. Taylor, David J. Theising, Christopher & Taylor, Indianapolis, Ind., Richard T. West, Follmer & West, Urbana, Ill., for plaintiffs-appellants.
 G. Daniel Kelley, Gary J. Dankert, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., Gail E. Mrozowski, Barbara J. Hillman, Cornfield & Feldman, Chicago, Ill., for defendants-appellees.
 Before COFFEY, FLAUM, and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 Terry Ray Sluder and Tina Sluder filed a three-count complaint against District 12 of the United Mine Workers of America, among others, for the personal injuries Mr. Sluder sustained when a wall collapsed in the coal mine where he was working. The district court concluded that resolution of two of the Sluders' counts required interpretation of the collective bargaining agreement that governed the terms of Mr. Sluder's employment. For this reason, the district court found that the claims were preempted by section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185,[1] and subject to dismissal pursuant to Fed.R.Civ.P. 12(b)(6). The remaining count was dismissed with prejudice voluntarily by the Sluders. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 Terry Ray Sluder was a coal miner employed by AMAX Coal Company (AMAX) at its Wabash Mine in Keensburg, Illinois. Mr. Sluder was a member of the United Mine Workers of America, District 12 (District 12). The terms of his employment with AMAX were governed by a collective bargaining agreement known as the National Bituminous Coal Wage Agreement of 1984. Mr. Sluder alleges that on July 31, 1986, and on prior occasions, "District 12, by and through its agents John Doe and/or Tom Roe, undertook to make inspections as to safety practices at the Wabash Mine in Keensburg, Illinois, which inspections included, but were not limited to, checking for proper placement of rib bolts at said coal mining facility." R.25 at 1-2.[2] Moments after the inspectors completed their inspection, the mine wall in the area where Mr. Sluder was working collapsed. Mr. Sluder was paralyzed as a result of the accident.
 
 B. Procedural History
 
 4
 On November 24, 1986, Mr. Sluder and his wife filed a two-count complaint in the Circuit Court of the Seventh Judicial Circuit of Sangamon County, Illinois (cause No. 86-L-464) against District 12 and two unknown defendants, John Doe and Tom Roe, agents of District 12. On January 26, 1987, the plaintiffs filed an amended complaint that added both a third count and the International Union as a new defendant. Count I alleged that District 12, by and through its agents, undertook to make safety inspections of the coal mine where Mr. Sluder worked. It further alleged that District 12, by undertaking these inspections, became subject to the state common-law duty to perform these inspections with due care. Negligence in performing such inspections, the allegation continued, resulted in the collapse of the mine wall and caused serious personal injury to Mr. Sluder. Count II alleged that Mrs. Sluder had suffered the loss of her husband's services and that she had been deprived of his affection, society, companionship, and consortium. Count III alleged that both the International Union and District 12 breached a duty of fair and adequate representation under section 301 of the LMRA by failing to perform and enforce certain provisions of the collective bargaining agreement on Mr. Sluder's behalf.
 
 
 5
 On January 27, 1987, the Sluders filed a second complaint (cause No. 87-L-32) in the same court. The complaint in cause No. 87-L-32 was identical to the amended complaint in cause No. 86-L-464. On February 25, 1987, the union filed a petition for removal of both state court actions to the United States District Court for the Central District of Illinois. The two state complaints were consolidated in the district court into one case, cause No. 87-3086. The Sluders neither objected to removal nor moved to remand the case to state court. On March 4, 1987, the International Union filed its motion to dismiss Count III of the Sluders' complaint. Two weeks later, District 12 moved to dismiss all three counts.
 
 
 6
 The case was referred to a magistrate. On February 18, 1988, the magistrate recommended that the district court dismiss Counts I and II of the Sluders' complaint as preempted by section 301 of the LMRA, but that Count III not be dismissed. Sluder v. United Mine Workers of America, No. 87-3086, Magistrate's Recommendation at 7 (C.D.Ill. Feb. 18, 1988); R.27 [hereinafter Recommendation]. On March 7, 1988, the district court adopted the Recommendation without change. Sluder v. United Mine Workers of America, No. 87-3086, Order at 1 (C.D.Ill. March 7, 1988); R.31. The Sluders then moved for a final dismissal order under Fed.R.Civ.P. 54(b) or, in the alternative, for an order permitting an interlocutory appeal under 28 U.S.C. § 1292(b). The district court denied this motion on June 10, 1988. In order to proceed with an immediate appeal of the dismissals of Counts I and II, the Sluders moved for dismissal of Count III with prejudice and for entry of final judgment. On August 30, 1988, the district court dismissed Count III and entered an order of final judgment. On September 27, 1988, the Sluders filed a timely notice of appeal.[3]C. District Court Opinion
 
 
 7
 The district court adopted the magistrate's reasoning as its own.[4] The magistrate had noted that, although the Sluders had not moved to remand the case to state court, it was the district court's responsibility to determine whether it had jurisdiction. The magistrate concluded that "[a] de novo review of plaintiffs' claims establishes that their complaints arise under federal law (29 U.S.C. § 185) and removal is proper." Recommendation at 3.
 
 
 8
 The magistrate examined both parties' arguments. Citing McColgan v. United Mine Workers of America, 124 Ill.App.3d 825, 80 Ill.Dec. 183, 464 N.E.2d 1166 (1984), cert. denied, 470 U.S. 1051, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985), District 12 alleged that "as a matter of Illinois law, it owed no duty arising under common law tort to [the Sluders] for alleged wrongs" in the inspection of the mine. Recommendation at 3-4. District 12 further argued that the Sluders' "so-called tort action was merely a novel attempt to avoid the exclusive remedy provisions of the Illinois Workers Compensation Act." Id. at 4. Finally, District 12 argued that "such so-called tort causes were in actuality the 'artful pleading' of a federal case couched in terms of state law which sought to avoid the preemptive scope of Section 301." Id. By contrast, the Sluders argued that the "complained-of activity--which they characterize as the negligent performance of a voluntarily assumed duty[,] citing Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769 (1964)--states a valid tort cause of action arising wholly independently of obligations imposed by the collective bargaining agreement." Id.
 
 
 9
 The magistrate concluded that a review of the complaint "conclusively establish[es] that plaintiffs' basis for duties alleged in Counts I and II arise[s] from obligations devolved by the collective bargaining agreement." Id.[5] The magistrate concluded that "[p]laintiffs['] 'artfully pled' claims are 'inextricably intertwined' with a construction of the collective bargaining agreement and thus preempted by Section 301 of the Labor Management Relations Act." Id. at 5.
 
 II
 DISCUSSION
 
 10
 On appeal, we must decide whether the Sluders' claims set forth in Counts I and II of the complaint are preempted by section 301 of the LMRA.
 
 A. Submissions of the Parties
 
 11
 The Sluders alleged that District 12, through its agents, conducted a negligent inspection of the mine. In the Sluders' view, these counts allege a "state law negligence claim for breach of a state common law duty assumed and undertaken by [District 12] when it performed the safety inspection" of the mine. Appellants' Br. at 10. They further submit that the assumed duty did not arise out of the collective bargaining agreement, but, instead, arose by operation of law after District 12 assumed and undertook the duty to inspect the mine.
 
 
 12
 District 12 acknowledges the legal principle, well established in Illinois law, that liability may arise from the negligent performance of a voluntary undertaking. See Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769, 773 (1964). However, it notes that the scope of the duty owed by the tortfeasor is limited to the extent of the undertaking. Pippin v. Chicago Hous. Auth., 78 Ill.2d 204, 35 Ill.Dec. 530, 533, 399 N.E.2d 596, 599 (1979). In order to determine the scope of that undertaking, District 12 maintains that it is necessary to interpret the collective bargaining agreement. This necessity for reference to the agreement, concludes District 12, triggers the preemptive effect of section 301.
 
 B. The Mandate of Lingle
 1.
 
 13
 Our disposition of this matter must be governed by the Supreme Court's holding in Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The mandate of Lingle is straightforward: "an application of state law is preempted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." Id. 108 S.Ct. at 1885. As we noted in Douglas v. American Information Technologies Corp., 877 F.2d 565, 569 (7th Cir.1989):
 
 
 14
 This approach is straightforward because the policy concern requiring preemption in the section 301 context is also straightforward. Federal labor policy mandates that uniform federal law be the basis for interpreting collective bargaining agreements. This policy reduces the possibility "that individual contract terms might have different meanings under state and federal law." Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962). Conflicting interpretations of contract terms "would inevitably exert a disruptive influence" on the collective bargaining process. Id.
 
 However, as we also noted in Douglas:
 
 15
 [F]ederal labor policy does not prevent states from providing workers with substantive rights independent of the collective bargaining relationship. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 212, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). Indeed, in Lingle, the Court made it clear that, so long as a state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for the purposes of section 301. 108 S.Ct. at 1883. Thus, "s 301 pre-empts state law only insofar as resolution of the state-law claim requires the interpretation of a collective-bargaining agreement." Id. at 1883 n. 8. The mere fact that the state-law analysis might require the state court to focus on the same facts that would control resolution of an employee's contractual remedy is not enough to require preemption of the state-law claim. Id. at 1883. If adjudication of the state-law claim does not require a court to interpret any term of a collective bargaining agreement, then that state-law claim is not preempted by section 301. See id. at 1881-82 (analysis of the elements of Illinois tort of retaliatory discharge does not require court to interpret collective bargaining agreement).
 
 
 16
 Id. at 569-70 (footnote omitted).
 
 2.
 
 17
 According to the methodology established in our post-Lingle cases,[6] our next step must be to analyze the state-based cause of action for negligence so that we may later determine whether adjudication of such a claim would require an interpretation of the collective bargaining agreement. On several recent occasions, this court has examined the Illinois law governing the imposition of liability for a voluntary undertaking. We have noted that "[u]nder controlling Illinois law, liability may arise from the negligent performance of a voluntary undertaking." Homer v. Pabst Brewing Co., 806 F.2d 119, 121 (7th Cir.1986) (citing Pippin v. Chicago Hous. Auth., 78 Ill.2d 204, 35 Ill.Dec. 530, 399 N.E.2d 596 (1979), and Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769 (1964)). However, we have stressed that "the scope of the duty is limited by the extent of the undertaking." Id. (citing McColgan v. United Mine Workers, 124 Ill.App.3d 825, 80 Ill.Dec. 183, 464 N.E.2d 1166 (1984)). "Illinois courts have carefully examined the nature of a defendant's undertaking, imposing a duty only to the extent actually assumed by the defendant." Id. Indeed, Illinois courts "require that any duty assumed be limited strictly to the scope of the undertaking." Figueroa v. Evangelical Covenant Church, 879 F.2d 1427, 1435 (7th Cir.1989) (emphasis supplied).
 
 
 18
 "Under the common law ... it is the employer, not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace." IBEW, AFL-CIO v. Hechler, 481 U.S. 851, 859, 107 S.Ct. 2161, 2167, 95 L.Ed.2d 791 (1987) (emphasis in original); see W. Prosser & W.P. Keeton, Torts § 80 at 569 (5th ed.1984).[7] It is, of course, possible that a third party, such as District 12, might assume this duty. However, before liability could be established, it would be necessary to establish that the union breached a specific duty it had assumed toward the employees. In order to define the scope of the duty assumed by the union, it would be necessary to establish the precise responsibility assumed by the union.
 
 3.
 
 19
 In our view, it would not be possible to define, with the precision demanded by Illinois law, the scope of the union's duty without reference to the collective bargaining agreement that governs the relationship between the company and the union. Indeed, the necessity for such a reference is evident from the complaint itself. One of the specific acts of negligence attributed to District 12 by the Sluders was that the union "[c]arelessly and negligently failed to close said mining facility in light of its unreasonably dangerous condition." R.25 at 2. The union's authority to close the employer's facility is, of course, not a right granted by law but, if at all, by the collective bargaining agreement. The collective bargaining agreement and the dispute resolution process established under that agreement set forth the circumstances under which such action by the union would be permitted. Indeed, Count III, which was dismissed voluntarily by the Sluders, contains extensive abstracts of the collective bargaining agreement that make it quite evident that District 12's right to inspect the mine and to deal with the employer with respect to safety deficiencies is a major concern of that agreement. There, the rights and responsibilities of both employer and employee with respect to mine safety are set forth in detail. The collective bargaining agreement outlines not only the union's responsibility with respect to the two mine safety committees but also limits District 12's right to interfere in the operation of the mine.
 
 
 20
 As we noted extensively in Nelson v. Central Illinois Light Co., 878 F.2d 198 (7th Cir.1989), the Supreme Court in Lingle "pointedly acknowledged that 'state-law analysis might well involve attention to the same factual considerations as the contractual determination.' " Id. at 202 (quoting Lingle, 108 S.Ct. at 1883). However, the Supreme Court also noted in Lingle that it does not follow "that such parallelism renders the state-law analysis dependent upon the contractual analysis." 108 S.Ct. at 1883. Preemption under section 301 "merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." Id. at 1883. Here, delineation of District 12's duty would require more than the resolution of factual disputes. Unlike the "purely factual" claims in Lingle, the question of duty in this case is one of law and is open to varying interpretations under the collective bargaining agreement.[8] Indeed, our situation is not at all dissimilar from that facing the Supreme Court in IBEW, AFL-CIO v. Hechler, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987). There, a worker had brought suit against her union in state court, alleging that the union had breached its duty to ensure that she received essential training. In determining that her claim was preempted by section 301, the Supreme Court noted that:
 
 
 21
 In order to determine the Union's tort liability, however, a court would have to ascertain, first, whether the collective-bargaining agreement in fact placed an implied duty of care on the Union to ensure that Hechler was provided a safe workplace, and, second, the nature and scope of that duty, that is, whether, and to what extent, the Union's duty extended to the particular responsibilities alleged by respondent in her complaint.... The need for federal uniformity in the interpretation of contract terms therefore mandates that here, as in Allis-Chalmers [Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) ], respondent is precluded from evading the pre-emptive force of § 301 by casting her claim as a state-law tort action.
 
 
 22
 Id. 481 U.S. at 862, 107 S.Ct. at 2168.[9] In short, if not preempted by section 301, these claims could increase the possibility that "individual contract terms might have different meanings under state and federal law." Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962). Such conflicting interpretations of contract terms "would inevitably exert a disruptive influence" on the collective bargaining process. Id.
 
 4.
 
 23
 As we have noted, the allegations set forth in Counts I and II of the complaint can be resolved only by defining the precise nature of the duty assumed by District 12, and that duty can be defined only by reference to the collective bargaining agreement. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); see also Gully v. First Nat'l Bank, 299 U.S. 109, 112-13, 57 S.Ct. 96, 97-98, 81 L.Ed. 70 (1936). As the Supreme Court has explained, "[t]he rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar, 482 U.S. at 392, 107 S.Ct. at 2429. In cases raising claims under section 301 of the LMRA, the Supreme Court employs an independent corollary to the well-pleaded complaint rule known as the "complete pre-emption" doctrine. Id. at 393, 107 S.Ct. at 2430. As this court recently noted in Douglas v. American Information Technologies Corporation, 877 F.2d 565, 568-69 (7th Cir.1989) (footnote and citation omitted),
 
 
 24
 [T]he preemptive force of section 301 " 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " [Caterpillar, 482 U.S. at 393, 107 S.Ct. at 2430] (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)). As the Supreme Court explained in Caterpillar, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Id. ... Thus, state-law claims preempted by section 301 are properly removable to federal court despite a plaintiff's failure to plead explicitly a federal cause of action. See Lingle, 108 S.Ct. at 1881 n. 5.
 
 
 25
 The plaintiffs cannot escape the application of these principles and " 'deny a defendant his right to a federal forum by artfully disguising an essentially federal law claim in terms of state law.' " Oglesby v. RCA Corp., 752 F.2d 272, 275 (7th Cir.1985) (quoting Nuclear Engineering Co., Inc. v. Scott, 660 F.2d 241, 249 (7th Cir.1981), cert. denied, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982)).
 
 
 26
 Under the usual application of these principles, a determination that the plaintiff had stated a federal cause of action under section 301 of the LMRA would result in the denial of a motion to remand, and the case would remain in federal court, although subject to dismissal for failure to exhaust administrative remedies. See Douglas v. American Information Technologies Corp., 877 F.2d 565, 573-74 (7th Cir.1989). Here, however, the plaintiffs, apparently as a tactical maneuver in order to obtain a final judgment, voluntarily dismissed with prejudice their section 301 claim. Under these circumstances, Counts I and II of the Sluders' complaint, which also states a claim under section 301, ought to be dismissed with prejudice as well. Accordingly, the judgment of the district court is affirmed.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 Section 301 of the LMRA provides in relevant part:
 (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties....
 29 U.S.C. § 185(a).
 
 
 [2]
 Rib bolts are devices secured to the walls of an underground coal mine to provide structural support in order to prevent the mine walls from collapsing. Appellants' Br. at 8
 
 
 [3]
 Because the Sluders made a strategic decision to dismiss Count III with prejudice as a means to finalize the order dismissing Counts I and II, the dismissal of Count III is not being appealed. The only defendants named in Counts I and II were District 12, John Doe, and Tom Roe. Consequently, although the notice of appeal also indicates an appeal against the International Union, this union was not a named defendant in Counts I and II and thus is not a party to this appeal
 
 
 [4]
 The court also granted the Sluders thirty days to file an amended complaint. The record reveals that no amended complaint was filed
 
 
 [5]
 The magistrate cited the plaintiffs' memorandum in opposition to District 12's motion to dismiss which stated that:
 "[T]he Complaint alleges that this Defendant failed to report the unsafe condition, failed to warn Plaintiff Terry Sluder and failed to close the mining facility, all of which it was legally and contractually obligated to do.... Even assuming, arguendo, that the inspection that the union did perform before the mine collapse was 'voluntary' as opposed to mandatory, once undertaken, the collective bargaining agreement required it to warn plaintiff Terry Sluder, to report the safety violation and to close the mine. Thus, the scope of the duty is clearly defined."
 Recommendation at 4-5 (quoting Plaintiffs' Mem. at 2-3 [R.16 at 2-3] (emphasis supplied by the magistrate).
 
 
 [6]
 See Marzuki v. AT & T Technologies, Inc., 878 F.2d 203 (7th Cir.1989); Nelson v. Central Illinois Light Co., 878 F.2d 198 (7th Cir.1989); Bettis v. Oscar Mayer Foods Corp., 878 F.2d 192 (7th Cir.1989); Douglas v. American Information Technologies Corp., 877 F.2d 565 (7th Cir.1989)
 
 
 [7]
 Prosser and Keeton cite a Supreme Court of Illinois case in which Illinois employed this common law approach. See W. Prosser & W.P. Keeton, Torts § 80 at 569 n. 3 (5th ed.1984) (citing Armour v. Golkowska, 202 Ill. 144, 66 N.E. 1037, 1038 (1903))
 
 
 [8]
 The complaint indicates that the International Union and District 12 are both bound by the National Bituminous Coal Wage Agreement of 1984. At oral argument, appellants' counsel asserted that the district court decided that Counts I and II were preempted by section 301 without the benefit of having the entire collective bargaining agreement before it. However, before the district court rendered a final judgment after dismissing Count III, the union filed a third-party complaint against AMAX, Mr. Sluder's employer, seeking contribution should International be found liable to the Sluders. The union attached a copy of the collective bargaining agreement to support its claim that AMAX was equally liable under the agreement for any breach of duty owed to Mr. Sluder. It is appropriate for us to refer to the agreement as a matter of common sense and judicial economy. See Marzuki v. AT & T Technologies, 878 F.2d 203, 207 (7th Cir.1989)
 
 
 [9]
 In Hechler, the worker suggested on appeal that, under state law, the Union had an independent responsibility to the worker "by virtue of its relationship with its members, rather than as a result of the collective bargaining agreement." 481 U.S. at 863 n. 5, 107 S.Ct. at 2168 n. 5. While declining to rule on "the impact of hypothetical state law," id. at 864 n. 5, 107 S.Ct. at 2169 n. 5, the Court appeared to express skepticism that such a claim could survive a preemption challenge. It seems clear that, in Illinois, the union's duty is defined by the collective bargaining agreement. McColgan v. United Mine Workers, 124 Ill.App.3d 825, 80 Ill.Dec. 183, 464 N.E.2d 1166 (1984), cert. denied, 470 U.S. 1051 (1985)
 We are aware that the Supreme Court of Idaho addressed the same issue in Rawson v. United Steel Workers of America, 115 Idaho 785, 770 P.2d 794 (1988), -- U.S. ----, 110 S.Ct. 714, 107 L.Ed.2d 734 (1989). While the particulars of the collective bargaining arrangement and of the content of Idaho state law are not entirely clear, it appears that, by a divided vote, the Idaho court resolved this issue contrary to the approach taken by us. Assuming that neither the facts nor the applicable state law permits a principled distinction between the cases, we respectfully disagree. In our view, the dissenting opinion of Justice Bakes reflects a more accurate reading of Hechler and Lingle. It recognizes that, because the union's duty must be defined by reference to the collective bargaining agreement, preemption of the state cause of action is required. Rawson, 770 P.2d at 798 (Bakes, J., dissenting). Indeed, in an earlier opinion, before remand from the Supreme Court of the United States for reconsideration in light of Hechler, the Idaho majority explicitly had noted that the provisions of the collective bargaining agreement defined the nature and scope of the union's duty. Rawson v. United Steel Workers of America, 111 Idaho 630, 726 P.2d 742, 752 (1986), vacated on other grounds, 482 U.S. 901, 107 S.Ct. 2475, 96 L.Ed.2d 368 (1987). As we note in the text, this determination requires, in our view, a conclusion that the claim is preempted.