770 P.2d 794

Tharon RAWSON, individually and as Guardian ad Litem for her minor children, Seth Rawson and Cindy Rawson, heirs of John R. Rawson, deceased, Plaintiff–Appellant,

v.

UNITED STEELWORKERS OF AMERICA, an unincorporated association, Defendant–Respondent.

Bernice JOHNSON, individually and as Guardian ad Litem for Michael Wayne Johnson, Ruth Ellen Johnson and John Russel Johnson, Plaintiff–Appellant,

v.

UNITED STEELWORKERS OF AMERICA, an unincorporated association, Defendant–Respondent.

Laura DUNBAR, as Guardian ad Litem for Rickina Rossiter and Glen Raymond Rossiter, Jr., minor children and heirs of Glen Raymond Rossiter, Plaintiff–Appellant,

v.

UNITED STEELWORKERS OF AMERICA, an unincorporated association, Defendant–Respondent.

Mary WOOD, as Guardian ad Litem for Leslie D. Wood, her minor child, heir of Don B. Wood, deceased, Plaintiff–Appellant,

v.

UNITED STEELWORKERS OF AMERICA, an unincorporated association, Defendant–Respondent.

No. 15338.

Supreme Court of Idaho.

Dec. 22, 1988.

Rehearing Denied April 19, 1989.

Kenneth B. Howard, Jr., Coeur d'Alene, and Lloyd J. Webb, Twin Falls, for plaintiff-appellant.

Bredhoff and Kaiser, Washington, D.C., for defendant-respondent. George H. Cohen argued.

Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, as amicus curiae. Richard B. Kading argued.

## ON REMAND FROM WRIT OF CERTIORARI

HUNTLEY, Justice.

1986 Opinion No. 30, issued February 24, 1986, was withdrawn upon grant of rehearing and a new Opinion No. 124 of September 4, 1986, *Rawson v. United Steelworkers of America,* 111 Idaho 630, 726 P.2d 742, was entered. The United States Supreme Court granted certiorari and ultimately vacated the latter opinion, remanding to this Court for further consideration in light of *IBEW, AFL–CIO v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987). This opinion is issued pursuant to the remand.

### I.

The directive of the United States Supreme Court requires that we reconsider this case in light of the single issue presented in *Hechler, supra.* That issue is whether the state-law tort actions of the plaintiffs herein are pre-empted by § 301 of the Labor Management Relations Act of 1947 (LMRA), 61 Stat. 156, 29 U.S.C. § 185.

In *Hechler, supra,* the court had before it a substantially different issue than that presented herein. The court stated the issue as follows:

> The question presented by this case is whether a state-law tort claim that a union has breached its *duty of care to provide* a union member with *a safe workplace* is sufficiently independent of the collective bargaining agreement to withstand the pre-emptive force of § 301. (Emphasis supplied.)

Justice Blackmun characterized Hechler's complaint as follows:

> In her complaint, she alleged that "pursuant to contracts and agreements entered into by and between" the Union and Florida Power, and "pursuant to the relationship by and between" the Union and respondent, the Union had a duty to ensure that respondent "was provided safety in her work place and safe work place," and to ensure that respondent "would not be required or allowed to take undue risks in the performance of her duties which were not commensurate with her training and experience."

And Justice Blackmun noted:

> Respondent conceded: "The nature and scope of the duty of care owed [her] is determined by reference to the collective bargaining agreement."

107 S.Ct. at 2163, 64.

In the instant case we are not concerned with imposing a duty on the Union to provide a safe work place. Rather, the issue here is whether the LMRA pre-empted prosecution of a tort action where the activity was concededly undertaken and the standard of care is imposed by state law without reference to the collective bargaining agreement.

In *Dunbar v. United Steelworkers of America,* 100 Idaho 523, 602 P.2d 21 (1979), *cert. denied,* 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980), this Court dealt with the issue of federal pre-emption of the field under the LMRA. The steelworkers argue that all relationships between a union and its members resulting from a collective bargaining agreement are pre-empted, with the union's duty being only that of "fair representation." Although the N.L.R.B. has been given exclusive jurisdiction to regulate and interpret collective bargaining agreements, it has no authority to award damages in tort in favor of members and against the union. We remain of the view expressed in *Dunbar:*

> We are cited to no authority, for example, which insulates a union for its negligent and tortious conduct toward one of its members, i.e., if a member of a union was struck by a motor vehicle owned by the union and operated by one of its officials during the course of his employment for the union, we cannot believe the union would be insulated from liability on the basis that the only duty it owed toward its members was that of fair representation. If a union's unreasonable conduct results in the death of one of its members, it should not be excused from liability because of the legal fortuity of its organizational status anymore than if

its conduct brought death to a nonunion member.

100 Idaho at 527, 528, 602 P.2d at 25, 26.

In *Hechler, supra,* the court further focused the issue:

Under the principle set forth in *Allis–Chalmers [Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)], we must determine if respondent's claim is sufficiently independent of the collective-bargaining agreement to withstand the pre-emptive force of § 301. Respondent's state-law tort claim is based on her allegation that the Union owed a duty of care to provide her with a safe workplace and to monitor her work assignments to ensure that they were commensurate with her skills and experience. Under the common law, however, it is the *employer,* not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace.

(1985)] in providing a safe workplace.

107 S.Ct. at 2167.

■ In the instant case we are not faced with looking at the Collective Bargaining Agreement to determine whether it imposes some new duty upon the union—rather it is conceded the union undertook to inspect and, thus, the issue is solely whether that inspection was negligently performed under traditional Idaho tort law.

In *Hechler, supra,* the court noted:

Respondent's allegations of negligence assume significance if—and only if—the Union, in fact, had assumed the duty of care that the complaint alleges the Union breached. The collective-bargaining agreement between the Union and Florida Power, and ancillary agreements between those parties, contain provisions on safety and working requirements for electrical apprentices on which Hechler could try to base an argument that the Union assumed an implied duty of care. In order to determine the Union's tort liability, however, a court would have to ascertain, first, *whether the collective-bargaining agreement in fact placed an implied duty of care* on the Union to ensure that Hechler was provided a safe

workplace, and, second, the nature and scope of that duty, that is, *whether and to what extent, the Union's duty extended to the particular responsibilities alleged by respondent* in her complaint. Thus, in this case, as in *Allis–Chalmers,* it is clear that "questions of contract interpretation ... underlie any finding of tort liability." (Emphasis supplied.)

107 S.Ct. at 2168.

In the instant case there is no need to look to the agreement to discern whether it placed an "implied duty" on the union or whether the duty "extended to the particular responsibilities alleged" because here the parties concede the union did actively undertake the subject inspection duties. The only question is whether duties clearly undertaken were performed negligently.

The *Hechler* court noted further in footnote 5:

In her brief to this Court, respondent argues, for the first time, that her claim is not dependent on an interpretation of the collective-bargaining agreement, because the union's duty of care to her may arise through independent state law responsibilities placed upon the Union simply by virtue of its relationship with its members, rather than as a result of the collective-bargaining agreement. Brief for Respondent 15–19. Respondent points out that she alleged that the Union owed her a duty of care "pursuant to contracts and agreements" entered into between the Union and Florida Power "*and* pursuant to the relationship by and between" the Union and Hechler. App. 4 (emphasis added).

Even assuming that respondent's pleadings may be construed liberally as stating that various, unenumerated Florida laws place a duty of care on a union to provide a safe workplace for its members, respondent effectively abandoned that theory in the lower courts and we decline to consider the argument here.

107 S.Ct. at 2168.

Thus, the instant case is clearly distinguishable from *Hechler* in that here the

state tort basis of the action was not abandoned, but has been pursued consistently both at the trial and appellate levels and the tort exists without reference to the collective bargaining agreement.

Accordingly, *Hechler* is inapposite and does not stand for the proposition that a federal LMRA pre-emption exists in the instant case.

The June 1988 opinion of the United States Supreme Court in *Lingle v. Norge,* —— U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), would appear to be dispositive and controlling of this case. In *Lingle,* the question presented was whether an employee, covered by a collective bargaining agreement that provided her with a contractual remedy for discharge without just cause, could enforce her state law remedy for retaliatory discharge.

In holding that the state tort remedy was not pre-empted by § 301 of the LMRA, the court stated:

> To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge, cf. *Loyola University of Chicago v. Illinois Human Rights Comm'n,* 149 I.. [LL] App.3d 8 [102 Ill. Dec. 746] 500 N.E.2d 639 (1986); this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.
>
> . . . .
>
> ... even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

Likewise, in the instant case, no interpretation of the collective-bargaining agreement is required to determine whether the union member of the inspection team committed a tort when he committed various acts and omissions such as failure to note the self-rescuers were stored in boxes with padlocks or that the activating valves of the oxygen-breathing-apparatuses were corroded shut. Rather, such alleged acts of negligence are measured by state tort law.

We therefore adhere to our opinion as written.

## II.

Our Opinion No. 124 of September 4, 1986, ruled upon two primary issues other than the pre-emption issue in Part III thereof. In Part I we ruled for the union and against claimants on the fraud cause of action. In Part II we ruled for the claimants and against the union on the issue of whether a negligence cause of action would lie under Idaho law.

Counsel invites this Court to revisit those issues in this hearing on remand from certiorari. However, since the United States Supreme Court has jurisdiction only to require our reconsideration of matters involving federal law, our decisions in Parts I and II remain the law of the case and we decline to reopen them under certiorari procedure.

Costs to appellants, no attorney fees awarded.

SHEPARD, C.J., and BISTLINE, J., concur.

SHEPARD, Chief Justice, special concurrence.

I agree with the majority opinion that certiorari issued by the United States Supreme Court directs only that this Court consider the preemption issue. I agree with the majority opinion insofar as it treats that preemption question. However, I continue to adhere to my position expressed in *Rawson v. United Steelworkers,* 111 Idaho 630, 726 P.2d 742 (1986), wherein I dissented from Part II of the Court's

decision reversing the issue of summary judgment on the negligence claim.

BAKES, Justice, dissenting:

Aside from the fact that I believe the majority of this Court seriously errs in its evaluation of federal labor law, as expressed in my dissent in our original opinion, *Rawson v. United Steelworkers of America*, 111 Idaho 630, 726 P.2d 742 (1986) (Bakes, J., dissenting), and as set forth in the dissenting opinion of Johnson, J., in this rehearing, in which I concur, I believe the Court has now erred egregiously in its description of the factual record in this case. The majority opinion states, *ante* at 796, that "[i]n the instant case we are not faced with looking at the Collective Bargaining Agreement to determine whether it imposes some new duty upon the union—rather *it is conceded* the union undertook to inspect and, thus, the issue is solely whether that inspection was negligently performed under traditional Idaho tort law." (Emphasis added.)

The union has never conceded that it undertook to inspect the Sunshine Mine. The Court's opinion does not point to any pleading or any evidence in the record to sustain either its factual conclusion that the union undertook to inspect the mine, or its statement that the union has "conceded" that it undertook to inspect. There is absolutely nothing to support either of those two statements.

Rather, what the record discloses is that the union, pursuant to its obligations under the collective bargaining agreement, appointed certain members to the safety committee established by the collective bargaining agreement. That safety committee, which also was composed of management personnel, conducted whatever safety inspections which were made. There is absolutely nothing in the record to establish any *respondeat superior* relationship between the safety committee established under the collective bargaining agreement and the union. Nor is there anything else in the record establishing that anyone else on behalf of the union inspected the mine.

The collective bargaining agreement reserved the control and operation of the mine to the company. The union had no authority under the agreement to inspect the mine. It was the safety committee, formulated by the collective bargaining agreement, which undertook any inspection which was done, not the union. The union *has never conceded* that it undertook to inspect, and the majority's statement to that effect is totally unsupported by the record in this case.

Even assuming that the safety committee, which was composed of both management and union representatives, had made recommendations to correct unsafe conditions, and those recommendations had been called to the union's attention, the union could only have attempted to remedy those unsafe conditions through the procedures set out in the collective bargaining agreement. The safety committee was not the agent of the union. The union had no *respondeat superior* responsibility for the safety committee's action or inaction. Nor did the union have control of the mine. It was only through the grievance procedure set out in the collective bargaining agreement that the union could have influenced the employer to correct unsafe conditions which might have been called to the union's attention by the safety committee. Accordingly, the plaintiff's claim against the union is inextricably intertwined with the collective bargaining agreement, and federal, not state law is applicable. *I.B.E.W., AFL–CIO v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987). Under federal law the only duty which the union owed to its members was that of fair representation, *i.e.*, to adequately and fairly represent its members and pursuing the members' rights under the collective bargaining agreement to correct unsafe working conditions in the mine. The state tort law claims in this case conflict with the union's duty of fair representation under federal labor law, and accordingly in my view state tort law in this case is preempted. *I.B. E.W., AFL–CIO v. Hechler, supra.*

JOHNSON, Justice, dissenting.

I dissent from the decision of the majority holding that the tort action against the

Union based on Idaho law is not pre-empted by § 301 of LMRA. My view is that there is pre-emption.

In general, I concur with and adopt that part of the dissenting opinion of Justice Bakes in *Rawson v. United Steelworkers of America*, 111 Idaho 630, 649–53, 726 P.2d 742, 761–65 (1986), *vacated*, 482 U.S. 901, 107 S.Ct. 2475, 96 L.Ed.2d 368 (1987) (*Rawson I*) in which he expresses his view that there is pre-emption.

I am persuaded that *IBEW, AFL–CIO v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) requires us to hold that there is pre-emption. I am not persuaded that *Lingle v. Norge*, — U.S. —, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) supports a holding that there is no pre-emption.

In *Hechler* the Court ruled that interpretation of the collective bargaining agreement would be necessary to determine whether the Union had assumed the duty of care to provide a safe work place and "the nature and scope of that duty." 107 S.Ct. at 2168. The Court concluded: "The need for federal uniformity in the interpretation of contract terms therefore mandates that here, as in *Allis–Chalmers*, respondent is precluded from evading the pre-emptive force of § 301 by casting her claim as a state-law tort action." *Id.* In my opinion, this statement applies with equal force to this case.

The complaint in this case states that the Union "undertook to act as accident prevention representative and enforcer of the Company-union agreement and did it negligently." Except for any duty imposed by the collective bargaining agreement, the Union had no duty for the safety of its members. The existence of this duty and its nature and scope are dependent on the meaning of the collective bargaining agreement. In *Rawson I* this Court said that "the provisions of the collective bargaining agreement ... determine ... the nature and scope of the Union's duty." *Id.* 111 Idaho at 640, 726 P.2d at 752. I agree and for this reason would hold that *Hechler* applies.

*Lingle* does not dictate a different result. There, the Supreme court stated that "the

state-law remedy ... is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." 108 S.Ct. at 1882. The Court distinguished *Allis–Chalmers* and *Hechler* on the ground that in those cases, "pertinent principles of state law required construing the relevant collective-bargaining agreement." *Id.* n. 7. Here, I am unable to see how a court could ascertain the duty of the Union without determining the meaning of the collective bargaining agreement. This would require the interpretation or construction of the collective bargaining agreement.