775 P.2d 593

**STATE of Idaho, Plaintiff-respondent,**

v.

**Bryan Stuart LANKFORD,
Defendant-appellant.**

Nos. 15760, 16170.

Supreme Court of Idaho.

April 4, 1989.

Joan M. Fisher, Genessee, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen. (argued), Boise, for plaintiff-respondent.

BAKES, Justice.

This matter is before us on remand from the Supreme Court of the United States. That Court vacated our decision affirming Bryan Lankford's conviction and death sentence, *State v. Lankford*, 113 Idaho 688, 747 P.2d 710 (1987), and remanded for further consideration in light of its recent decision in *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). *Lankford v. Idaho*, 486 U.S. 1051, 108 S.Ct. 2815, 100 L.Ed.2d 917 (1988). After further consideration we again affirm the judgment of conviction and sentence imposed.

I

Our decision on remand requires us to analyze the United States Supreme Court opinion in *Satterwhite*. The Court began its opinion with the following:

"In *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), we recognized that defendants formally charged with capital crimes have a Sixth Amendment right to consult with counsel before submitting to psychiatric examinations designed to determine their future dangerousness." 108 S.Ct. at 1794–1795.

The Court in *Satterwhite* further stated:

"We granted certiorari to decide whether harmless error analysis applies to violations of the Sixth Amendment right set out in *Estelle v. Smith*." 108 S.Ct. at 1796.

The Court in *Satterwhite* held that the harmless error analysis does apply.

■ In this case Lankford did not raise the issue of a sixth amendment violation either at trial or on appeal. Accordingly, this issue is waived. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[1]

II

■ Lankford also argues that his fifth amendment privilege against self incrimination was violated when the trial court referred in sentencing to Lankford's testimony at the hearing for Mark's new trial motion. In its "FINDINGS OF THE COURT IN CONSIDERING DEATH PENALTY UNDER SECTION 19–2515, IDAHO CODE," the trial court considered the objective of "rehabilitation" and noted:

"The defendant has shown no remorse for his offenses. He has not cooperated with authorities after his arrest. He has told authorities that he and his brother had nothing whatsoever to do with the death of the Bravences. He has testified that his brother was alone involved in the murders. He has testified (On October 10, 1984, in the companion case, State v. Mark Lankford, Idaho County Case No. 20158) that he called the *Lewiston Tribune* and claimed that it was he alone who murdered the Bravences[.] [T]his he later denied and offered the explanation

---

1. We also note that there is no evidence of any sixth amendment violation in this case. During Lankford's trial he was represented by counsel and voluntarily chose to testify in his own defense. His testimony on direct and cross examination was extensive, describing not only his latest version of the killing of the Bravences, but also describing how he and his co-defendant brother, Mark, left Texas and came to Idaho. Lankford related details of the killings, placing blame primarily on Mark, and also related their theft and use of the Bravences' van and credit cards, which the two brothers used to make their way back to Texas.

After Lankford's conviction, but before sentencing, his counsel approached the prosecutor of-

fering his client's testimony in Mark's upcoming trial, in exchange for immunity from future prosecutions for the charges of robbery and fraudulent use of the credit cards. An immunity agreement was approved and executed by Lankford and his counsel in open court. At every step of his brother's trial Bryan Lankford was represented by counsel. Later, Lankford was subpoenaed as a witness at a hearing on Mark's motion for new trial and was represented by counsel at every step of that proceeding. Accordingly, there is no evidence in the record that Lankford's sixth amendment right to counsel was violated, unlike the situation in *Satterwhite*.

which is set forth in the addendum to the presentence investigation report under date of October 3, 1984, to the effect that it was simply part of a plan that would secure freedom for his brother who could in turn free him.

"Suffice it to say that defendant has failed to take any responsibility whatsoever for his actions. This court specifically finds that the defendant has no capacity for rehabilitation."

Assuming that *Satterwhite* applies equally where a fifth amendment violation is shown, as distinguished from a sixth amendment violation, we now analyze the fifth amendment issue since it was adequately raised on direct appeal and therefore was not waived.

As we stated in our original opinion, footnote 7, there is no factual predicate for a fifth amendment violation. Footnote 7 states:

"7. Lankford asserts that the district court judge used the immunized testimony in its findings of fact to support the imposition of the death penalty. However, the record does not support that assertion. While the district court described Lankford's testimony at his brother's motion for new trial in its sentencing memorandum, it was not considered as an aspect of any of the statutory aggravating-circumstances found by the court. During the district court's oral discussion of the sentence, the judge stated:

'The defendant has shown no remorse for his offenses. He has not cooperated with authorities after his arrest. He has told authorities that he and his brother had nothing whatsoever to do with the death of the Bravences. He has testified that his brother was alone involved in the murders. He has testified on October 10, 1984 in the companion case, State v. Mark Lankford, Idaho County Case No. 20158, that he called the *Lewiston Tribune* and claimed that it was he alone who murdered the Bravences. This he later denied and offered the explanation which is set forth in the addendum to the presentence investigation report

under date of October 3, 1984, to the effect that it was simply part of a plan that would secure freedom for his brother, who could in turn free him.'

"Although it is true that the district court judge pointed out the conflicting testimony given by Lankford at various times, including the testimony given pursuant to the immunity agreement, there has been no showing that the sentence was based upon the comments quoted above."

After further review of the "FINDINGS OF THE COURT IN CONSIDERING DEATH PENALTY UNDER SECTION 19-2515, IDAHO CODE," we continue to adhere to the view expressed in footnote 7 of our original opinion. Accordingly, we find no factual predicate for Lankford's claim.

### III

■ Even if we assume that the trial court considered Bryan's testimony at Mark's motion for new trial in arriving at Bryan's sentence, this consideration does not constitute a violation of the fifth amendment. Lankford's testimony at his brother's hearing for new trial related a version of facts given twice previously, once voluntarily at his own trial and again at Mark's trial pursuant to the immunity agreement. That testimony, as the trial court noted, was that "his brother was alone involved in the murders." This differed from Lankford's original version, that neither were involved. The whole basis of Mark's motion for new trial was that Bryan Lankford telephoned a local newspaper, the *Lewiston Tribune*, recanted his previous testimony and asserted, as the trial court noted, "that it was he [Bryan] alone who murdered the Bravences." By the time the motion was heard, Bryan Lankford had recanted the version he gave to the *Lewiston Tribune*, and reasserted the version he gave at his own trial and at his brother's trial.

The trial court's only reference at sentencing to Bryan Lankford's testimony given at the hearing on Mark's motion for a

new trial, was to note the recurrent changes in Bryan Lankford's story. The trial court did not believe the substance of Bryan's *Tribune* story—that he alone committed murder. In denying Mark's motion for new trial, the trial court stated:

> "I'm satisfied that the new evidence that does consist of the statement by Bryan Lankford to the effect that he was totally responsible for the death or deaths of the Bravences was false. That particular statement was merely a product of depression, an effort, perhaps to get attention, certainly an effort to get out of trouble or to avoid punishment for what he did, and it is a very real possibility that two involved in a crime such as this, after they are both convicted of first degree murder, could tell then, different stories to help one get a new trial and, then, the other one could help the other get a new trial and certainly eventually hope for the acquittal of both or the acquittal of one."

The only consideration given to Lankford's testimony at Mark's new trial proceeding was that it again supported the trial court's observation that Lankford had not taken responsibility for his actions as evidenced by his repeated attempts to upset the course of justice by constantly changing his story, which damaged his credibility in the eyes of the court.

■ When Bryan Lankford, while represented by counsel, voluntarily took the stand in his own defense, testified at length concerning the entire transaction, and was cross examined, he effectively waived any immunity he had under the fifth amendment with respect to the subject matter of the testimony he gave. *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). Having thus waived any privilege against self incrimination, the trial court could consider at sentencing the fact that Lankford was continually giving false testimony under oath, by his ever changing version of the facts. As the trial court noted, Lankford, by continuing to change his story, "failed to take any responsibility whatsoever for his actions." To the trial court, Lankford's continual tes-tifying falsely under oath evidenced a scheming on his part which demonstrated a lack of "capacity for rehabilitation."

■ Lankford argues that the sentencing was a proceeding entirely separate from his trial and that he can therefore reassert his waived privilege. However, if a defendant has previously waived his privilege against self incrimination by voluntarily testifying at trial, that waiver continues into sentencing with respect to the testimony voluntarily given at trial. *See Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). *See also Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); *cf. United States v. Houp*, 462 F.2d 1338, 1340 (8th Cir.1972) ("Once the privilege is effectively waived, the information given is admissible at any subsequent trial," *citing Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1981)); *Neely v. State*, 97 Wis.2d 38, 292 N.W.2d 859, 864 (1980) ("[A] defendant who takes the stand in his own behalf cannot then claim the privilege against cross examination on matters reasonably related to the subject matter of his direct examination," *citing McGautha v. California*, 402 U.S. 183, 215, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711 (1971)).

Neither Lankford's immunity under the agreement nor his privilege against self incrimination prevent the trial court from considering at sentencing his lack of credibility resulting from his inconsistent and false testimony in the several proceedings prior to sentencing. There is no protected right to commit perjury either under the fifth amendment, *United States v. Wong*, 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977); *Glickstein v. United States*, 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911), or pursuant to I.C. § 19–1115.

Accordingly, since the testimony Lankford gave at the hearing on his co-defendant brother's motion for new trial involved the same transaction and the same matters which he voluntarily testified about in his own defense on his own case, there was no fifth amendment immunity available to him with respect to these matters, and there could be no fifth amend-

ment violation. Assuming that the United States Supreme Court's decision in *Satterwhite* applies to fifth amendment as well as sixth amendment claims, it still has no application to this case because there was no fifth amendment violation. Accordingly, we need not reach the *Satterwhite* "harmless error" analysis. We reaffirm our prior decision in this matter.

## IV

■ As an alternative and independent ground for our decision, we hold that even if Lankford had not testified at his own trial, thereby waiving immunity under the fifth amendment, the immunity agreement which he and his counsel proposed and voluntarily entered into was sufficient to waive his .fifth amendment privilege against self incrimination with respect to testimony given at Mark's trial and hearing on motion for new trial.

## V

Lankford has again raised other issues of state law previously raised on direct appeal. Our prior opinion, *State v. Lankford*, 113 Idaho 688, 747 P.2d 710 (1987), resolved all those other issues against Lankford and those other issues are the law of the case and final. *Rawson v. United Steelworkers of America*, 115 Idaho 785, 770 P.2d 794 (1988) ("[S]ince the United States Supreme Court has jurisdiction only to require our reconsideration of matters involving federal law, our decisions [on state law issues] remain the law of the case and we decline to reopen them under certiorari procedure.").

We reaffirm our prior decision.

SHEPARD, C.J., and HUNTLEY, J., concur.

JOHNSON, Justice, concurring and dissenting.

I concur in part V, but dissent from parts II, III and IV of the majority opinion. In my view, Lankford's fifth amendment rights were violated by the trial court's reliance at sentencing on Lankford's testimony at the trial of Lankford's brother and at the hearing on his brother's motion for a new trial. The testimony at the brother's trial was given by Lankford after an immunity agreement had been approved by the trial court. The testimony at the hearing on the brother's motion for a new trial was given by Lankford after the trial court had accepted an agreement by defense counsel and the prosecutor that Lankford's testimony would be used only for the purposes of his brother's motion for new trial. I would hold that under *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) this violation was not harmless error.

## LANKFORD'S IMMUNIZED TESTIMONY AND ITS USE IN SENTENCING.

Lankford and the prosecuting attorney entered into an immunity agreement concerning his testimony at his brother's trial. The agreement recited that Lankford would refuse to answer questions if he were called to testify, on the ground that he might incriminate himself. The agreement granted Lankford immunity "from prosecution and penalty co-extensive with Idaho Code § 19–1114." The trial court found that there was "good cause" for the agreement and approved it. At his brother's trial Lankford testified that his brother killed the Bravences.

After his brother was convicted, Lankford was called to testify at a hearing on his brother's motion for a new trial. His attorney told the trial court in that hearing that on the basis of the fifth amendment she had advised Lankford not to testify. She said that she did not want him testifying on matters to which he had testified previously, because she did not believe that his testimony at his brother's trial was voluntary, but was coerced. After extended discussion between the trial court and counsel, the trial court accepted the agreement of the prosecuting attorney and Lankford's attorney that Lankford's testimony at the hearing would be used for purposes of his brother's motion for new trial and for no other purpose. Lankford then testified about a conversation he had with a newspaper reporter from the Lewiston

**284**

Tribune. He told the reporter that he alone killed the Bravences. He testified at the hearing on his brother's motion for a new trial that this was a lie and that he had told the reporter he committed the murders because his brother told him to do it.

In sentencing Lankford to death the trial court considered both his testimony at his brother's trial and his testimony at the hearing on his brother's motion for a new trial. Under the title "Reasons Why Death Penalty Was Imposed" in the trial court's findings considering the death penalty, the trial court referred to this testimony and concluded by stating:

> Suffice it to say that the defendant has failed to take any responsibility whatsoever for his actions. This court specifically finds that the defendant has no capacity for rehabilitation.

Fifteen lines later the trial court imposed the death penalty.

### LANKFORD'S FIFTH AMENDMENT RIGHTS WERE VIOLATED.

It is clear that Lankford would not have testified at his brother's trial, or at the hearing on his brother's motion for a new hearing, unless his testimony had been immunized. The use of his testimony by the trial court in sentencing was a violation of his rights under the fifth amendment. *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

In *Kastigar* the Supreme Court said:

> Immunity from the use of compelled testimony ... prohibits the prosecutorial authorities from using the compelled testimony in any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness.

Id. at 453, 92 S.Ct. at 1661.

In my view, this prohibition was violated when the trial court used Lankford's testimony in fashioning his sentence.

### THE VIOLATION WAS NOT HARMLESS ERROR.

In its original opinion in this case (*State v. Lankford,* 113 Idaho 688, 747 P.2d 710 (1987)) this Court quoted the portion of the

findings of the trial court concerning Lankford's testimony at his brother's trial and at the hearing on his brother's motion for new trial and stated:

> Although it is true that the district court judge pointed out the conflicting testimony given by Lankford at various times, including the testimony given pursuant to the immunity agreement, there has been no showing that the sentence was based upon the comments quoted above.

Id. at 696, 747 P.2d at 718, n. 7.

In my opinion, it is this comment that caused the United States Supreme Court to vacate the judgment and to remand this case to us for further consideration in light of *Satterwhite v. Texas.*

In *Satterwhite* the Supreme Court held:

> It is important to avoid error in capital sentencing proceedings. Moreover, the evaluation of the consequences of an error in the sentencing phase of a capital case may be more difficult because of the discretion that is given to the sentencer.
>
> . . . .
>
> The question ... is not whether the legally admitted evidence was sufficient to support the death sentence, which we assume it was, but rather, whether the State has proved "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Citing Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).)

486 U.S. at 258–259, 108 S.Ct. at 1798, 100 L.Ed.2d at 290.

I am unable to say, beyond a reasonable doubt, that Lankford would have been sentenced to death, if his immunized testimony had not been used.

I would reverse and remand for resentencing and direct the trial court not to consider the immunized statements of Lankford.

BISTLINE, J., concurs.