834 P.2d 883

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Mark Albert TATE, Jr., Defendant–Appellant.**

No. 18788.

Court of Appeals of Idaho.

April 7, 1992.

Siebe, Landeck, Westberg & Judge, Moscow, for defendant-appellant. James Siebe, argued.

Larry Echohawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent. Myrna A.I. Stahman, argued.

SWANSTROM, Judge.

Mark Tate, Jr., was convicted by a jury of felony driving under the influence. I.C. §§ 18–8004, –8005(3). The district court issued an order for withheld judgment and probation, and Tate appeals. We affirm.

Tate raises several issues: (1) did the district court err when it granted the state's motion in limine preventing the defense expert, Dr. Barclay, from testifying (a) regarding his calculation of Tate's blood alcohol concentration (BAC)[1] at the time of the arrest, and (b) that he was of the opinion that Tate was not "under the influence" at the time of the arrest, when that ultimate conclusion would be based on calculations that Tate had a BAC below .10; (2) did the court err when it instructed the jury that Tate had no constitutional or statutory right to refuse to comply with the request for a BAC evidentiary test; (3) did the court err in allowing comment or inference by the state regarding Tate's refusal to submit to the BAC evidentiary test; (4) did the court err in refusing to give a *"Holder"* instruction; and (5) did the court fail to adequately consider Tate's "motion to suppress and motion to dismiss," which challenged the magistrate's finding that probable cause existed to bind Tate over to the court for trial. In his brief, Tate raises three additional issues, however, at oral argument those issues, as well as an argument raised by the state that the sentence was improper, were withdrawn by counsel.

## FACTS

At approximately 2:00 a.m. on Sunday, June 18, 1989, a Moscow police officer observed a vehicle driven by Tate, with out-of-county license plates, turn into a central turn bay and proceed approximately 500 feet in the turn bay. The officer followed Tate's vehicle and observed Tate turn left

1. We use "BAC" to indicate alcohol concentration regardless of the method used for calculating it.

and then right with four or five feet of his vehicle protruding into the oncoming lane during the right turn. Tate's vehicle drifted four or five feet into the oncoming lane once more while it proceeded through an intersection. At this time, the officer activated his overhead lights. Tate continued to drive for one block, turned right, and drove approximately 150 feet before he stopped. As Tate fumbled through his wallet, the officer observed that Tate's fingers moved in a slow and clumsy manner. Tate's eyes appeared glassy, he swayed while standing, and the officer smelled alcohol on his breath. Tate informed the officer that he had drunk three or four beers. After Tate attempted to perform normal field sobriety tests, the officer concluded that Tate was under the influence of alcohol and arrested him. Upon transporting Tate to the sheriff's office, the officer read the alcohol advisory form to Tate, and asked Tate to submit to a BAC test. Tate refused to submit to this test.

### 1. Expert BAC Evidence

The first issue raised is whether the district court properly limited the trial testimony of Tate's expert, Dr. Barclay. The court prevented Barclay from testifying as to what, in Barclay's opinion, Tate's imputed BAC would have been at the time of his arrest. The court also ruled that Barclay could not testify giving his opinion that Tate was not "under the influence" at the time of the arrest, when such opinion was based upon the imputed BAC calculation made by Barclay. The determination of the admissibility of expert opinion testimony is within the discretion of the trial court, and absent an abuse of that discretion, the decision by the trial court will not be disturbed. *Sidwell v. William Prym, Inc.*, 112 Idaho 76, 730 P.2d 996 (1986); *State v. Hopkins*, 113 Idaho 679, 747 P.2d 88 (Ct.App.1987).

The state had filed a motion in limine to prevent Barclay from testifying about Tate's BAC, contending that such evidence was irrelevant. The court initially granted the state's motion. However, during the course of the trial, Tate's counsel made an offer of proof through questions presented to Barclay in the absence of the jury. Barclay testified that he holds a doctoral degree in biochemistry and has worked fourteen and one-half years as a clinical biochemist and toxicologist at Deaconess Medical Center in Spokane, Washington. Barclay testified that he would be able to impute Tate's BAC at a given point in time using the "Widmark Equation" which is based upon an individual's weight, the amount of alcohol consumed, the time span involved, and average ratios for the absorption and elimination of alcohol. Barclay estimated that Tate's BAC was within a range of .026 and .051. The district court summarized Barclay's proposed testimony to be that he would estimate Tate's BAC below .10, and that he would testify that people are generally under the influence if their BAC is above .10 and generally not under the influence if their BAC is below .10. Based upon this record, the court reiterated its decision to disallow Tate to present expert evidence as to his imputed BAC because in the court's view, the evidence was irrelevant.

Shortly after Tate's trial, this Court issued an opinion in *State v. Andrus*, 118 Idaho 711, 800 P.2d 107 (Ct.App.1990), discussing the issue Tate has raised. In *Andrus*, the defendant also refused to submit to a BAC test. Consequently, the state offered general evidence to prove that Andrus was "under the influence" of alcohol while driving his vehicle. At his trial, Andrus sought to introduce a chart from the Idaho Driver's Manual reflecting the projected amount of alcohol in a person's system based on various rates of consumption over various periods of time. With this evidence, Andrus sought to establish that his BAC was below .10 and thus to prevent any conviction pursuant to I.C. § 18–8004(2).

In *Andrus*, we noted that the methods to measure alcohol concentration for evidentiary purposes of I.C. § 18–8004 are governed by the statute, citing I.C. § 18–8004(4). We held that the proffered evidence of a driver's manual chart to prove Andrus's probable alcohol concentration by

extrapolation was properly refused. In *Andrus*, we stated that,

> [i]f a defendant has refused the police request for an alcohol concentration test, and the state proceeds under general proof that he was impaired by the influence of alcohol, the defendant may not later attempt to establish by direct proof, expert testimony, hypothetical example or otherwise what his alcohol concentration was or could have been.

*Andrus*, 118 Idaho at 714, 800 P.2d at 110.[2]

Applying *Andrus*, we hold that the district court did not abuse its discretion in refusing to allow Tate's proffered expert testimony about his BAC and any opinion based thereon. We also affirm the court's rejection of this evidence based upon its own rationale that the evidence lacked relevance. I.R.E. 401. Because the state could only prove that Tate drove "under the influence of alcohol" with evidence demonstrating that Tate's ability to drive was impaired, any evidence regarding Tate's BAC was unnecessary and irrelevant.

The statutory scheme adopted by the Idaho Legislature to deal with the problem of intoxicated drivers makes it clear that, as a matter of policy, the state places great importance upon the use of readily available, reasonably precise scientific devices for determining the alcohol concentration in a person's blood, breath or urine. *See, e.g., State v. Breed*, 111 Idaho 497, 501, 725 P.2d 202, 206 (Ct.App.1986); *State v. Bell*, 115 Idaho 36, 764 P.2d 113 (Ct.App.1988). *In Matter of Smith*, 115 Idaho 808, 812, 770 P.2d 817, 821 (Ct.App.1989), we held that the public interest in obtaining scientific information about the blood-alcohol levels of motorists accused of driving under the influence is better served by a policy encouraging the use of such evidence.

By refusing the requested test, Tate prevented the state and thus the jury from obtaining the most reliable and accurate evidence of his BAC. As a matter of policy, where a defendant by his own choice has denied access to the scientifically more reliable evidence, recognized by statute and case law, he should not be allowed to introduce less reliable secondary evidence consisting of nothing more than an imputed BAC. Accordingly, we adhere to our *Andrus* decision and will apply it here. We conclude that the trial judge committed no error in rejecting the expert's opinion evidence offered in this case.

### 2. Jury Instruction on Lack of Right to Refuse BAC Test

The next issue Tate raises is whether the instruction informing the jury that he had no right to refuse to submit to a BAC test was proper. Tate asserts error arising from the portion of Instruction 6B and Substitute Instruction 6B which read:

> A driver does not have a constitutional or statutory right to refuse to comply with his previously given consent to such an evidentiary test, nor does he have the right to consult with an attorney before submitting to such evidentiary testing....

Tate contends that this language amounted to evidence of prior bad acts prohibited by I.R.E. 404(b), and that it raised an inference that Tate was guilty of other offenses, thereby prejudicing him. We will review the instructions as a whole to determine if they correctly state the law. *State v. Lankford*, 113 Idaho 688, 747 P.2d 710 (1987), *reaff'd*, 116 Idaho 279, 775 P.2d 593 (1989), *rev'd on other grounds*, —— U.S. ——, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991).

First, we note that the instruction given by the court was a correct statement of the law. *See, e.g., State v. Woolery*, 116 Idaho 368, 775 P.2d 1210 (1989) (holding that there is no statutory right to refuse to submit to an evidentiary test for BAC); I.C. § 18–8002(2) (providing that when an officer has statutory grounds for requesting a BAC test of a driver, that "person

---

**2.** Andrus's appeal also raised an issue concerning the jury instructions given at trial. We held that the instructions were erroneous, and remanded the case for a new trial. Primarily for guidance of the trial court on remand, we found it necessary to discuss the admissibility of the expert's opinion evidence which the trial court had rejected.

shall not have the right to consult with an attorney before submitting to [the test.]") *See also State v. Ankney,* 109 Idaho 1, 704 P.2d 333 (1985).

Tate argues, nevertheless, that the instruction suggested that Tate was guilty of some offense or broke the law simply by refusing the test, because the instruction said that he had "no right" to do so. He contends also that the instruction was unnecessary and "placed undue weight upon the fact of refusal." We have considered these arguments, but ultimately we are unpersuaded that they have merit.

### 3. State's Comment or Inference of Tate's Refusal of BAC Test

Tate contends that allowing the state to comment on his refusal to submit to a BAC test was erroneous and that no inference could be drawn from his refusal. As support for these contentions, Tate asserts that evidence of his refusal is testimonial and is protected by the privilege against self-incrimination. Tate withdrew these supporting assertions at oral argument, thus we will not address them. Moreover, because the record does not contain the closing arguments of counsel, Tate cannot demonstrate that the state in fact commented upon his refusal of the BAC test. Therefore we will not address this issue on appeal. *Garnett v. Transamerica Ins. Services,* 118 Idaho 769, 800 P.2d 656 (1990).

### 4. Court's Refusal to Give a Holder Instruction

Tate next asserts that the court erred by refusing to give Defendant's Requested Instruction 7, also referred to as a *"Holder"* Instruction. *State v. Holder,* 100 Idaho 129, 594 P.2d 639 (1979). Defendant's Requested Instruction 7 provided:

> You are instructed that if the evidence in this case as to any of the material allegations of the Complaint is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the Defendant and the other to his innocence, it is your duty under the law to adopt that interpretation which

will admit of the Defendant's innocence, and reject that which points to his guilt. In *Holder,* the Supreme Court held that it was error for the trial court to refuse a similar instruction in that case. *Id.* The Court pointed out, however, that the evidence presented by the state was entirely circumstantial. Circumstantial evidence is that which "indirectly proves one of the facts on which a party has the burden of proof in the case, by means of proving one or more facts from which the fact at issue may be inferred." IDJI 123 (1987). Direct evidence "directly proves one of the facts on which a party has the burden of proof in the case, without resorting to inference." *Id.* The rule that a criminal defendant is entitled to an instruction such as that above when the state's evidence is wholly circumstantial is still the law in Idaho. *State v. Randles,* 117 Idaho 344, 787 P.2d 1152 (1990). We must, of course, decline the state's invitation to cast aside the rule set forth by our Supreme Court in *Holder* and re-affirmed in *Randles.*

In his brief, Tate concedes that the present case was submitted upon both circumstantial and direct evidence. This situation existed in an earlier case where the judge gave a "watered-down version of the *Holder* instruction." *State v. Spurr,* 115 Idaho 898, 900, 771 P.2d 916, 918 (Ct.App. 1989). In that case we held that a *Holder* instruction was not necessary "where the state's evidence is *not* entirely circumstantial." *Id.* We think that this converse rule of *Holder,* announced in *Spurr,* is applicable to the facts of this case.

The state introduced direct testimony of the officer that Tate was in control of the vehicle within Latah County, Idaho, and that in his opinion, Tate was intoxicated. The circumstantial evidence introduced supported the inference that Tate was under the influence, and added to the officer's opinion that Tate was under the influence. The circumstantial evidence consisted primarily of observations of the prolonged driving in the turn bay, the wide turn, the other occasion where the vehicle drifted to the left. There was also evidence which led the officer to believe Tate was im-

**371**

paired, such as odor of beer on Tate's breath and his inability to adequately perform the field sobriety tests. Because the evidence was not entirely circumstantial, the district court did not err in refusing Defendant's Requested Instruction 7.

### 5. Motion Re: Preliminary Hearing

 Tate filed a "motion to suppress and motion to dismiss in re: preliminary hearing" (I.C. § 19–815A motion). In relevant part, the motion sought to persuade the district court to dismiss the case based on a lack of proof at the preliminary hearing of sufficient cause to bind Tate over for trial. I.C. § 19–815A. Tate first argues on appeal that the record suggests that the district court did not adequately consider this motion. Tate also contends that the magistrate erred in ruling that there existed sufficient probable cause to bind Tate over for trial before the district court.

We decline to address the two arguments presented by Tate. Where a defendant has been convicted pursuant to a fair trial, we refuse to examine the sufficiency of the evidence at a preliminary hearing where a magistrate concluded probable cause existed to bind the defendant over to district court for trial. *State v. Maylett,* 108 Idaho 671, 701 P.2d 291 (Ct.App.1985); *see State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336, *cert. denied,* 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983); *State v. Pierce,* 107 Idaho 96, 685 P.2d 837 (Ct.App.1984). Because Tate has not challenged the fairness of the trial or the sufficiency of the evidence presented by the state at trial, we refuse to address the issues of whether the district court adequately considered the I.C. § 19–815A motion and whether the district court erred in denying that motion. *State v. Maylett, supra.*

### CONCLUSION

Tate has not shown that the district court abused its discretion in limiting the testimony of Barclay. The instruction that Tate had no right to refuse to take the BAC test was proper. We refuse to consider whether the prosecutor made improper comment upon Tate's refusal to submit to

the BAC test because we are without an adequate record. It was not error for the court to refuse to give a *Holder* instruction. We decline to address the sufficiency of the evidence supporting the magistrate's finding of probable cause where Tate was convicted following a fair trial. For the above stated reasons, we affirm the district court's order for withheld judgment and probation.

WALTERS, C.J., and SILAK, J., concur.