888 P.2d 798

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Joey D. SCHNEIDER, Defendant–Appellant.**

No. 20894.

Court of Appeals of Idaho.

Jan. 20, 1995.

Robert J. Van Idour, Lewiston, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Joey D. Schneider pled guilty to first degree murder, I.C. §§ 18–4001, 18–4003, and received a life sentence. The district court ordered that the entire sentence be served as a minimum period of confinement without eligibility for parole, discharge, credit or reduction for good conduct. I.C. § 19–2513. The court also denied a motion under I.C.R. 35 for reconsideration of the sentence imposed. Schneider appeals, contending that the court abused its sentencing discretion by ordering that he serve the entire sentence in confinement without the possibility of release on parole.

After Schneider's opening brief on appeal was filed but before the State had filed a responding brief, Schneider escaped from the institution where he was being held by the Board of Correction. He was captured and returned to the Board's custody four days later. The day after Schneider escaped and while Schneider was still at large, the State moved to dismiss this appeal on the ground that Schneider had forfeited his opportunity to appeal by escaping. Following Schneider's capture, the Supreme Court entered an order that the State's motion for dismissal would be taken under advisement for consideration at the time argument was presented on the merits of the appeal. The case was then assigned to the Court of Appeals for disposition.

We deny the State's motion to dismiss and, on the merits, affirm the judgment of conviction and the sentence imposed.

## MOTION TO DISMISS

In Idaho, the right to appeal is purely statutory and is not mandated as a constitutional requirement. *Gardner v. State*, 91 Idaho 909, 435 P.2d 249 (1967). While escape is separately punishable as a crime, I.C. §§ 18–2505, 18–2506, there is neither a statute nor an appellate rule that requires the dismissal of an appeal as a result of the appellant's escape from custody during the pendency of an appeal. Nor do we find any published opinion of our Supreme Court addressing the effect of an escape by an appellant. We have been cited by the State to two previous appeals, *State v. Creamer*, No. 13126, and *State v. McKaughten*, No. 13677, which were dismissed by the Supreme Court by unpublished orders in 1980, as a result of escapes by the appellants. It appears that the appellants in those cases remained at large and were fugitives at the time their appeals were dismissed. In the instant case, Schneider was recaptured before the appellate court acted on the State's motion to dismiss.

Consistent with guidance provided by the United States Supreme Court, *Ortega–Rodriguez v. United States*, 507 U.S. ——, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993), and in the absence of any contrary holding by our own Supreme Court, we conclude that whether to dismiss an appeal because of an escape from custody by the appellant while the appeal is pending, is a question to be decided by the appellate court through the exercise of sound discretion. Furthermore, although dismissal of a pending appeal while the defendant is a fugitive may serve substantial interests,

the same interests do not support a rule of dismissal for all appeals filed by former fugitives, returned to custody before invocation of the appellate system. Absent some connection between a defendant's fu-

gitive status and his appeal, as provided when a defendant is at large during "the ongoing appellate process," ... the justifications advanced for dismissal of fugitives' pending appeals generally will not apply. *Ortega–Rodriguez,* 507 U.S. at ——, 113 S.Ct. at 1208, 122 L.Ed.2d at 597 (citation omitted). The necessary "connection" sought by the Supreme Court in *Ortega–Rodriguez,* was one where the defendant's "former fugivity was deemed to present an obstacle to orderly appellate process." 507 U.S. at ——, 113 S.Ct. at 1209, 122 L.Ed.2d at 598. Otherwise stated, the former fugitive circumstance must be "sufficiently disruptive of the appellate process that dismissal would be a reasonable response." *Id.* The Court discounted as based on a faulty premise the concept of dismissal merely "for any act of judicial defiance, whether or not it affects the appellate process." *Id.*

■ We recognize that there are factual differences between *Ortega–Rodriguez* and the background in the instant appeal. *Ortega–Rodriguez* involved the failure of the defendant to appear for sentencing following his conviction. He was subsequently taken into custody on a charge of contempt of court and failure to appear. When he was sentenced after his apprehension, he appealed, seeking to challenge his conviction. The government moved to dismiss the appeal as a consequence of the defendant's flight before sentencing and before the appeal was undertaken. The United States Supreme Court held that the defendant's absence before sentencing did not necessarily interfere with the subsequent appellate process so as to permit the appellate court to dismiss the proceeding, within its discretion, as a reasonable sanction. Here, Schneider became a fugitive while his appeal was proceeding, but he was also recaptured within few days. His status as a fugitive did not disrupt the appellate process.

Under these circumstances, we can perceive no difference in the cases insofar as applying the United States Supreme Court's rationale that there must be a disruption of the appellate process by the defendant's absence to justify dismissal of an appeal as a discretionary sanction. To automatically dismiss the appeal simply because of Schneider's interim escapee status in defiance of the criminal justice system would be tantamount to applying the "faulty premise" disavowed in *Ortega–Rodriguez.* As was noted by a federal appeals court in a case very similar to Schneider's,

> Once an escapee flagrantly refuses to obey a court order to return to custody, knowing quite well his recalcitrance will cost him an appeal, it seems thoroughly reasonable to close the courthouse doors to his claim. But in the instant case, where the court had no need to flex its muscles and set up a time limit for Snow's surrender, its seems somewhat inequitable to dismiss his claim and in effect penalize Snow simply because the authorities found him so soon. Furthermore, Snow's escape and subsequent recapture did not inconvenience the court's schedule. Oral argument was able to proceed as planned.
>
> Given that Snow was back in custody within thirty days of his escape, the court has decided to exercise its discretion in favor of permitting the appeal to proceed. The government's motion to dismiss is denied.

*United States v. Snow,* 748 F.2d 928, 930 (4th Cir.1984). *See also, Mascarenas v. State,* 94 N.M. 506, 612 P.2d 1317 (1980). Similarly, because Schneider's short-term fugitive status did not interfere with the orderly processing of this appeal, we conclude that our discretion would be more appropriately exercised by denying the State's motion to dismiss.

Accordingly, the State's motion to dismiss is denied.

### SENTENCE REVIEW

In Idaho, a person who commits first degree murder may be punished either by execution or by imprisonment for life. I.C. § 18–4004; *State v. Wilson,* 107 Idaho 506, 690 P.2d 1338 (1984). Furthermore, when a sentence to the custody of the Board of Correction is imposed, the sentencing court may order a minimum period of confinement during which the prisoner may not be paroled. I.C. § 19–2513. Here, the State

agreed not to seek the death penalty, in exchange for Schneider's plea of guilty to the charge of first degree murder. The district court imposed the life sentence required by I.C. § 18–4004 under the circumstances, but ordered that the entire sentence be served as a minimum period of confinement. On appeal, Schneider argues that this sentence—incarceration for the remainder of his life—was an abuse of the court's sentencing discretion.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse if it is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent examination of the record, having regard to the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct. App.1982).

The background facts of the murder charge against Schneider are as follows. On Friday, August 14, 1992, Schneider and his cousin, Raymond, started drinking beer late in the afternoon, in Lewiston, Idaho, as soon as they got off work. They began drinking at their place of employment, and then visited several bars in the Lewiston area where they continued drinking. They met Lourie Weber at the Arbor Lounge.

Weber was very intoxicated and had been refused further service by the bartender. Schneider, Raymond and Weber left the bar in Schneider's car, stopped and purchased more beer, and then drove to Coyote Gulch Road to continue drinking. They parked the vehicle, and Schneider decided he wanted to have sex with Weber. They exited the vehicle and engaged in kissing and fondling. When Weber made it clear that she was unwilling to engage in intercourse, Schneider removed her clothes, held a beer bottle to her head as if it were a gun and forced her to kneel down and perform oral sex upon him. He then engaged in intercourse with Weber while she was on her hands and knees, over her repeated insistence that she did not want to have sex with him.

Schneider testified that, at this point, Raymond hit Weber on the head with a fire extinguisher that had been in Schneider's car, and that Weber attempted to run away, but the two men chased her down and brought her back to the car so that Schneider could again force her to have sex. Schneider further testified that when he finished his sexual activities, Raymond then beat Weber about the head with the fire extinguisher and the two of them placed Weber's body in the trunk of the car.

Schneider's testimony was contradicted by a statement given to the police by Raymond. He told the police that it was Schneider who hit Weber with the fire extinguisher and that Schneider did so five or six times.

After Weber was put in the trunk of the car, the two men returned to the Arbor Lounge to pick up Raymond's truck, and then they drove to the plant where they worked to get shovels, and some water and acid to clean out the trunk of Schneider's car. With these supplies and Weber still in the trunk, they both got in Schneider's car and drove to Waha, a rural area south of Lewiston.

At Waha they pulled off the road and began digging a grave. When Schneider lifted Weber's naked body out of the trunk, he thought he heard her breathe. Afraid that she was still alive, he hit her again in the head with the fire extinguisher and carried her to the grave. Once he placed her in the grave, he picked up a small log and repeatedly struck her in the head several times more because he "did not want to bury her alive."

The two men covered the body and disposed of evidence of the crime. Their involvement in the crime was discovered when Weber's mother reported her missing a few days later and the Schneiders were tentatively identified as the men who had left the Arbor Lounge with Weber the night she was last seen. When Raymond Schneider learned that the police had focused on him as a possible suspect in the disappearance, he contacted the authorities through an attorney, gave them a statement concerning the events of Weber's death, and led the police to the gravesite. Joey Schneider turned himself into the police the same day.

At sentencing, the court noted that Schneider had a stable employment record, a good family history, a good military record, a supportive wife and no prior felony convictions. Weighed against these mitigating factors, however, the court found that the crime involved a vicious, unprovoked attack without justification or excuse and that Schneider posed a danger to women which could arise from his sexual frustrations while in a state of intoxication. The court found that although the possibility of rehabilitation existed, the other sentencing objectives of protection of society, deterrence and punishment or retribution for wrongdoing weighed in favor of incarceration. The court specifically found that Schneider was a potential danger to society inasmuch as no one could predict whether his alcohol abuse and anger would result in another deadly combination; that a sentence should serve as a deterrent to Schneider and to others so that all might understand the consequences of prolonged brutality to helpless victims; and that punishment for his conduct could not be overlooked.

■ Schneider argues that his sentence is out of proportion to sentences imposed in other first degree murder cases and therefore constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and art. I, section 6 of the Idaho Constitution. This argument is not persuasive. Schneider's sentence was not an extreme sentence grossly disproportionate to the crime committed. *See Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (per Justices Kennedy, O'Conner and Souter). In *State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992), the Idaho Supreme Court adopted Justice Kennedy's approach in *Harmelin* and held that Brown's fixed life sentence for rape did not constitute cruel and unusual punishment. The court explained:

> [U]nder our state constitution a criminal sentence is cruel and unusual punishment only when it is "out of proportion to the gravity of the offense committed, and such as to shock the conscience of reasonable (people)." *[State v.] Broadhead*, 120 Idaho 141, 148, 814 P.2d 401, 408 [ (1991) ]. This traditional Idaho constitutional rule focusing on the gravity of the offense is well established and appropriate and is essentially equivalent to the "grossly disproportionate" test used by Justice Kennedy's opinion in *Harmelin*.
>
> . . . . .
>
> We limit our proportionality analysis to death penalty cases and, under the Idaho Constitution as contemplated in *State v. Evans*, [73 Idaho 50, 245 P.2d 788 (1952) ], to those cases which are "out of proportion to the gravity of the offense committed" in the cruel and unusual punishment setting similar to the "grossly disproportionate" analysis urged by Justices Kennedy, O'Conner and Souter in *Harmelin*. The lack of objective standards for evaluating differing terms of imprisonment, *see Harmelin* [501 U.S. at 999–1002], 111 S.Ct. at 2704–05, gives proportionality review outside these two limited areas the potential of essentially allowing, if not requiring, this Court to second guess the trial court's discretionary determination of the criminal sentence that best fits the criminal defendant and the crime within the reasonable limits of the sentencing options.

121 Idaho at 394, 825 P.2d at 491. Our Supreme Court noted that the gravity of the offense in *Brown* was very great: Brown not only raped the victim but almost killed her; only remarkable medical procedures saved her life. Accordingly, the Supreme Court concluded that while it was not a homicide case, it could have been. The court held that Brown's fixed life sentence was not out of all proportion to the gravity of the offense, nor

was it so severe as to shock the conscience of reasonable people. Here, Schneider's crime took the extra step alluded to by the court in *Brown.* The criminal incident did become a homicide. Under the circumstances, we conclude that Schneider's sentence is not out of proportion to the gravity of the offense, nor is the sentence so severe as to shock the conscience of reasonable people.

■ Schneider also argues that the possibility of his rehabilitation weighs against the propriety of a fixed life sentence. However, the opportunity for rehabilitation as a means of achieving protection for society from a defendant's conduct is not the controlling factor. *State v. Moore,* 78 Idaho 359, 304 P.2d 1101 (1957).

> The primary consideration is, and presumptively always will be, the good order and protection of society. All other factors are, and must be, subservient to that end. Important as are the humanitarian considerations affecting the accused, his family and other relatives, and the importance to society of rehabilitation itself, such considerations cannot be allowed to control or defeat punishment, where other factors are ignored or subordinated to the detriment of society.

*Id.* at 363, 304 P.2d at 1103.

This Court previously has expressed a view with respect to the imposition of a determinate life sentence during which the prisoner may not be paroled. In *State v. Eubank,* 114 Idaho 635, 759 P.2d 926 (Ct.App. 1988), we said:

> [A] fixed life sentence may be deemed reasonable if the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence, or if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society.

*Id.* at 638, 759 P.2d at 929. *See also, State v. Pederson,* 124 Idaho 179, 857 P.2d 658 (Ct. App.1993).

■ It is clear in this case that the district court appropriately considered the nature of the offense, the character of the offender, and the sentencing objectives in pronouncing sentence. As our Supreme Court has noted, the seriousness of a homicide offense mandates a punishment in the form of a substantial prison sentence. *State v. Hooper,* 119 Idaho 606, 609, 809 P.2d 467, 470 (1991). A substantial sentence in this regard reflects society's condemnation of the defendant's conduct, deters other members of society from engaging in similar conduct, and protects society from future crime. *Id.* The gravity of the offense in this case, as shown by the circumstances, is sufficiently egregious, and the risk of recurrence if the defendant were ever released is sufficiently high to justify an exceptionally severe measure of retribution and deterrence. We hold that the sentence imposed was reasonable and that the district court did not abuse its discretion.

## CONCLUSION

The State's motion to dismiss this appeal is denied. The district court did not abuse its sentencing discretion by imposing a life sentence without the possibility of parole for first degree murder under the circumstances.

The judgment of conviction and sentence are affirmed.

LANSING, J., and SWANSTROM, J. pro tem., concur.