921 P.2d 759

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Raymond L. SCHNEIDER, aka Bud Schneider, Defendant– Appellant.**

No. 20982.

Court of Appeals of Idaho.

July 17, 1996.

Knowlton, Miles & Merica, Lewiston, for appellant.

Alan G. Lance, Attorney General; Catherine O. Derden, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

This is an appeal from a judgment of conviction for second degree murder entered against Raymond L. Schneider following a jury trial. Schneider challenges the admission of medical testimony regarding the cause of the victim's death and the court's failure to instruct the jury regarding consideration of expert testimony given in response to a hypothetical question. He also urges that his sentence is excessive. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Schneider and his cousin, Joey Schneider, were charged with first degree murder in connection with the death of Lourie Weber. Evidence presented by the State at Raymond Schneider's trial included the testimony of Joey, who had earlier pleaded guilty to first degree murder. According to that evidence, the crime occurred as follows.

On Friday, August 14, 1992 Schneider and Joey spent the evening drinking beer. During a visit to the Arbor Lounge in Lewiston, Idaho, they met Ms. Weber, who also had been drinking heavily. Schneider, Joey and Ms. Weber left the Arbor lounge in Joey's car, stopped and purchased more beer, and then drove several miles to an area named Coyote Gulch. Upon their arrival, Joey and Ms. Weber walked to the back of the vehicle where they began kissing. Joey decided he wanted to have sex with Ms. Weber, and when she was unwilling, he told Schneider to "get the gun out of the car." Knowing there was no gun in the car, Schneider instead handed Joey a beer bottle which Joey then used to simulate a gun, holding it to Ms. Weber's head to force her to perform oral sex. Joey attempted to force Ms. Weber to have sexual intercourse with him as well. Joey testified that when Ms. Weber protest-

ed, Schneider "tapped" her on the head with a fire extinguisher retrieved from the trunk of Joey's car and that Ms. Weber "took off running." Both men gave chase and recaptured the victim, after which Joey had intercourse with her. According to Joey, Schneider then beat her on the head with the fire extinguisher until she appeared to be unconscious. At that point, the two men put her body into the trunk of the car. Schneider and Joey drove the car back into town, made several stops and then travelled out of town to a more secluded area known as Waha, where they prepared a grave site. Joey testified that as Ms. Weber was being lifted out of the trunk, he thought he heard a gasp for air, so he struck her on the head repeatedly with a log to make sure she was dead. The two men then buried Ms. Weber.

Schneider's testimony differs from that of Joey as to what took place at Coyote Gulch. Schneider, testifying in his own defense, stated that he did not at any time strike Ms. Weber. Instead, he testified that when Joey decided to have sexual intercourse with Ms. Weber, Joey asked Schneider to hand him the fire extinguisher and Schneider complied. Schneider stated that it was Joey who used the extinguisher to bludgeon Ms. Weber on the head when she did not cooperate with his demands. According to Schneider, he tried to stop Joey's attack, but was overpowered by his cousin, who continued beating Ms. Weber until she lost consciousness. Schneider also testified that he believed Ms. Weber was dead when he, at Joey's insistence, placed her body in the trunk of the car.

A missing persons report was filed by Ms. Weber's mother, and an investigation ensued. On September 1, 1992, Schneider made a statement to the police about the events of the night and early morning of August 14–15, 1992. Joey was charged with and pleaded guilty to first degree murder, I.C. §§ 18–4001, 4003, and was sentenced to life in prison without parole.[1] Schneider was charged with being a principal to murder in the first degree by having aided and abetted Joey in the commission of the offense. *See* I.C. § 18–204. Schneider pleaded not guilty and

proceeded to trial. Following a jury verdict finding him guilty of second degree murder, Schneider was sentenced to life imprisonment with a minimum of twenty-five years' incarceration.

## II.

## ISSUES AND ANALYSIS

### A. Dr. Koenen's Testimony

At trial, the State called Dr. Carl Koenen, a pathologist who conducted an autopsy of Ms. Weber's body and prepared a death certificate which listed the immediate cause of death as a traumatic blow or blows to the head. Defense counsel objected to portions of Dr. Koenen's testimony, and on appeal Schneider assigns as error the district court's overruling of those objections. During direct examination by the prosecutor, Dr. Koenen testified that there were multiple lacerations on the victim's head that were probably caused by severe blows from hard objects. He stated that a fire extinguisher and a branch of wood that had been placed in evidence by the State could have been the instruments that struck Ms. Weber's head and caused the lacerations and skull fractures. Dr. Koenen rendered an opinion, to a reasonable degree of medical certainty, that Ms. Weber died as a result of multiple blows to the head. He stated that, based upon the wounds observed, the victim's head had been struck at least four times. Dr. Koenen stated that he was unable to form an opinion as to whether any one of the head wounds, by itself, would have been sufficient to cause the death of Lourie Weber, but reiterated his opinion that she had died as a result of the multiple blows to the head. Over the objection of defense counsel, Dr. Koenen's testimony then continued:

Q: Please assume that there is testimony that Miss Weber was hit with the fire extinguisher that you were shown, transported a period of time, later hit with the log that you were shown and then ultimately buried in a shallow grave. From your examination, were you able to form an opinion or are you

---

1. The judgment of conviction and sentence imposed in Joey Schneider's case was upheld in

able to form an opinion to a reasonable degree of medical certainty which mechanism, the fire extinguisher, the log or the burial actually caused the death of Lourie Weber?

A: No.

Q: Is it possible that the fire extinguisher was the creation of the death assuming that that was the first weapon used?

A: Yes.

Q: Is that to a reasonable degree of medical certainty?

A: Yes, that's possible.

Q: Is it possible that the log was the cause of death assuming it was the first or second one that was used to a reasonable degree of medical certainty?

A: That's possible.

Q: Do you have any way of saying whether Ms. Weber was dead or alive when she was placed in the grave?

A: I do not.

Q: Can you describe, doctor, did you see any signs of suffocation or internal signs of suffocation?

A: No. May I expand on that?

Q: Yes. Would you describe suffocation?

A: Suffocation is largely a diagnosis of exclusion. In the absence of anything else. There are subtle signs that we look for in cases of suffocation none of which are diagnostic but go along with the situations of suffocation. Her body had decayed and undergone so much degeneration that those subtle signs could not be seen and since suffocation is a diagnosis by exclusion I can't say that she did not suffocate, but I certainly could not say that she did.

Q: Is it possible to a reasonable degree of medical certainty that she could have suffocated given those wounds that are on her head?

A: Yes.

Schneider argues that the trial court erred in allowing the State to ask Dr. Koenen questions about suffocation being a possible cause of Ms. Weber's death. He contends that this testimony was speculative, and therefore inadmissible under I.R.E. 702, because it dealt with a possible cause rather than the probable cause of death.

■ The admission of expert testimony is discretionary with the trial judge, and absent a showing of abuse of discretion, it will not be reversed on appeal. *State v. Hopkins*, 113 Idaho 679, 747 P.2d 88 (Ct.App.1987); *State v. Tate*, 122 Idaho 366, 834 P.2d 883 (Ct.App. 1992).

■ The Idaho Rules of Evidence have expanded significantly the permissible scope of expert testimony. *State v. Alger*, 115 Idaho 42, 50, 764 P.2d 119, 127 (1988). I.R.E. 702 broadly allows an expert witness to testify if the scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.[2] "The wide reach of the rules governing expert testimony is derived from a fundamental policy favoring admissibility of all relevant evidence." *Alger*, 115 Idaho at 50, 764 P.2d at 127. However, an expert's opinion that is unsubstantiated by facts in the record, or that is speculative or conclusory, has little or no probative value and may be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Ryan v. Beisner*, 123 Idaho 42, 47, 844 P.2d 24, 29 (Ct.App.1992). *See also* I.R.E. 403.

■ Ordinarily, testimony about mere possibilities rather than probabilities is inadmissible because it is speculative or irrelevant and does not aid in the fact-finding process. However, in the context in which the challenged testimony of Dr. Koenen was presented, we conclude that its admission was not an abuse of the trial court's discretion. When this testimony that suffocation *could* have

---

**2.** I.R.E. 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

been a cause of Lourie Weber's death was introduced, Dr. Koenen had already clearly and unambiguously stated that it was his opinion, to a reasonable degree of medical certainty, that Ms. Weber died from blows to the head. His subsequent testimony, quoted above, did not alter that opinion but disclosed qualifications upon it—that Dr. Koenen could not rule out death by suffocation and could not determine whether the blows with the fire extinguisher or those with the log were more likely fatal.

Dr. Koenen's inability to completely rule out any one of the three possible causes of death does not render his testimony inadmissible. Here, the evidence implicated Schneider as a participant who aided and abetted Joey in the murder, *regardless* of which of the three instrumentalities killed the victim. Dr. Koenen testified to a reasonable degree of medical certainty that Lourie Weber's death was caused by one or both of the bludgeonings, but acknowledged that suffocation also could have been a factor. The testimony was relevant and could assist the trier of fact in addressing the factual issues presented in this case even though the doctor could not specify which among this series of attacks upon the body of Lourie Weber directly resulted in death.

Our evaluation of the admission of this testimony would be different if Schneider's only alleged involvement had been his participation in burying the victim and the State's only theory had been that he participated in a murder by suffocation, so that his conviction would require proof that the victim died from suffocation. However, the State's theory and the State's evidence in this case was not thus limited.

## B. Jury Instruction

Schneider also asserts as error the district court's refusal to give a jury instruction pertaining to Dr. Koenen's response to the hypothetical question posed by the prosecutor. Schneider requested, and the trial judge declined to give, the following instruction:

An expert witness was asked to assume that certain facts were true and to give an opinion based upon that assumption. This is a hypothetical question. If any fact

assumed in such a question has not been established by the evidence, you should determine the effect of that omission upon the value of an opinion based on that fact.

Schneider contends that where an expert has rendered an opinion based upon a hypothetical question, it is essential that the jury be cautioned to disregard the opinion if the question assumed facts not substantiated by the record.

Idaho Code Section 19–2132(a) requires that jurors be instructed on "all matters of law necessary for their information." Whether the jury was properly instructed is a question of law over which this Court exercises free review. *State v. Jones,* 125 Idaho 477, 873 P.2d 122 (1994), *cert. denied, Jones v. Idaho,* 513 U.S. 901, 115 S.Ct. 260, 130 L.Ed.2d 180 (1994); *State v. Tomes,* 118 Idaho 952, 801 P.2d 1303 (Ct.App.1990). In reviewing a trial court's refusal to give an instruction, the jury instructions are read as a whole to determine whether they fully and fairly represent the applicable law. *State v. Eastman,* 122 Idaho 87, 89, 831 P.2d 555, 557 (1992); *State v. Bowman,* 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App.1993). A requested jury instruction need not be given if it is either an erroneous statement of the law, adequately covered by other instructions, or not supported by the facts of the case. *Eastman,* 122 Idaho at 89, 831 P.2d at 557. *See also State v. Aragon,* 107 Idaho 358, 363, 690 P.2d 293, 298 (1984).

While Idaho courts have set out certain requirements for the admission of expert opinion based on hypothetical questions, *see State v. Birrueta,* 101 Idaho 915, 916, 623 P.2d 1292, 1293 (1981); *State v. Johnson,* 92 Idaho 533, 535, 447 P.2d 10, 12 (1968), there has not been established a requirement that the jury be specifically instructed on how to value or weigh such expert testimony, and we decline to adopt such a requirement in the case before us. First, we note that the "assumed" facts upon which the hypothetical question was premised were not in dispute; they were not only supported by evidence presented by the State but were also admitted by Schneider in his own testimony. Therefore, the requested instruction appears

to be unnecessary in this case even if such an instruction should be mandated in cases where facts assumed in the hypothetical question are contested.

In addition, the jury instructions given here adequately informed the jurors regarding their ultimate responsibility to weigh all of the evidence, which would include Dr. Koenen's opinion. The court instructed the jury that it was to decide the charge against Schneider from the evidence presented in open court and that the members of the jury were the sole judges of what facts had or had not been proven. The jurors were also instructed that they were the sole judges of the weight to be given the evidence and of the credibility of any witness, and that in determining credibility they could take into account many factors, including the reasonableness of the witness's testimony in light of all the evidence in the case. These instructions provided the guidance that was necessary for the jury's evaluation of Dr. Koenen's response to the prosecutor's hypothetical question.

## C. Sentence

██ Schneider also challenges his sentence of life imprisonment with a twenty-five-year minimum term of incarceration, which he asserts is excessive. Our standards for appellate review of sentences are well settled. When a sentence is within the statutory maximum permitted for the offense, we review the sentence for an abuse of discretion. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). The appellant has the burden to show that the sentence is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). The reasonableness of a sentence must be measured against the primary objective of protecting society and the related goals of deterrence, rehabilitation or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). On review of a sentence, we conduct an independent examination of the record, giving attention to the nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

██ Schneider argues that certain mitigating factors make his sentence excessive, including the absence of prior felony convictions, his efforts to cooperate with authorities and his supportive family. At the sentencing hearing, the district court made it clear that the court had carefully considered the presentence investigation report, Schneider's psychological evaluation, and the testimony given at the hearing in determining the appropriate sentence for Schneider's second degree murder conviction. Although the court acknowledged that Schneider might be amenable to rehabilitation, the court also noted that the extremely heinous and violent nature of the crime must be taken into account. The court focused on a number of aggravating factors, including the facts that: (1) the victim was viciously raped, beaten and murdered and that Schneider had assisted in these acts; (2) no fault could be assigned to the victim; (3) there was no excuse or justification for Schneider's actions; and (4) Schneider's conduct is indicative of a danger to others. The court stated: "[T]o assist in this brutalization of another human being indicates the presence of a personality that allows the participation in violent and insensitive behavior." As a result, the court concluded that the sentence imposed was appropriate not only to protect society but also to punish a crime that was "heinous, atrocious and cruel." Having reviewed the record and the court's careful consideration of both mitigating and aggravating factors, we find no abuse of discretion in the trial court's imposition of an indeterminate life sentence with a minimum of twenty-five years' incarceration.

The judgment of conviction for second degree murder and the unified sentence of life imprisonment with a twenty-five-year minimum period of confinement is affirmed.

WALTERS, C.J., and SWANSTROM, Judge Pro Tem., concur.